## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Aug 09 2017, 5:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose Tinajero-Garcia, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 9, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1701-CR-39 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> Trial Court Cause No. <br> 49G02-1004-MR-30036 |

**Mathias, Judge.**

[1] Jose Tinajero-Garcia ("Garcia") was convicted in Marion Superior Court of murder, a felony, and ordered to serve a fifty-five-year sentence executed in the Department of Correction. Garcia presents two issues on appeal:

1. Whether the State presented evidence sufficient to support his conviction for murder; and
2. Whether the fifty-five-year sentence is inappropriate in light of the nature of his offense and his character.

[2] We affirm.

## Facts and Procedural History

[3] On April 13, 2010, Garcia met Fabian Gutierrez-Barcenas ("Barcenas"). The men drank beer at Garcia's apartment with a third individual, a mutual friend named Ariel Reyes Hernandez ("Hernandez"). One or more of the men used cocaine in Garcia's apartment that night. At some point, Garcia and Barcenas walked Hernandez to his nearby apartment and returned to Garcia's apartment, where they continued to drink beer and talk. An argument between the men turned violent when Barcenas punched Garcia, who responded by slicing Barcenas's neck with a kitchen knife. Garcia brutally and repeatedly stabbed Barcenas in the neck, the face, the upper chest, the arm, the back, the finger and the ankle. At least four of the many stab wounds Barcenas suffered were sufficient to cause his death.

[4] Garcia called 911 shortly before 6:00 a.m. on April 14, 2010, and reported that he had killed a man in self-defense. Indianapolis Metropolitan Police Department Patrol Officer David Hutson ("Hutson") arrived at the apartment

complex and found Garcia standing outside with a bloodied knife at his feet and with blood-stained clothes, hands, and face. Garcia cooperated when Hutson handcuffed him and responded when Hutson asked where the victim's body could be found.

[5] In April 2011, Garcia entered a plea of guilty to murder pursuant to an agreement with the State. The Marion Superior Court sentenced Garcia to forty-five years executed in the Department of Correction. He filed a petition for post-conviction relief and in March 2016 the post-conviction court determined Garcia received ineffective assistance of counsel and did not enter the plea agreement intelligently and voluntarily. His guilty plea, conviction, and sentence were vacated.

[6] Garcia proceeded to a jury trial in November 2016. At trial, the Chief Forensic Pathologist of the Marion County Coroner's Office presented evidence of the extent of Barcenas's injuries. Several wounds to his neck severed the carotid and jugular vessels and were fatal. Deep, fatal stab wounds to his chest overlapped and intersected, making them impossible to count. Stab wounds to his back caused fatal damage to the aorta, lung, liver, and diaphragm. There was also evidence of numerous non-fatal injuries, some of which were described as defensive injuries Barcenas received in the struggle with Garcia. Garcia's injuries were limited to cuts on his hands sustained from the knife slipping during the attack on Barcenas.

[7] Garcia testified in his own defense. He admitted to drinking beers the night of April 13, 2010, but denied smoking the cocaine that was recovered from his apartment. He described how an argument with Barcenas escalated when Barcenas punched and threatened to kill him. Because the men had been talking about weapons, Garcia assumed Barcenas had a gun or a knife, although he never saw Barcenas with either and no other weapon was recovered in the apartment. Garcia believed Barcenas's threat was serious and testified that he was scared. He used a kitchen knife to attack Barcenas and did not stop his attack until Barcenas stopped moving.

[8] On November 29, 2016, the jury found Garcia guilty of murder and the trial court entered a judgment of conviction. At the December 15, 2016, sentencing hearing, the State argued that the nature of Garcia's crime was an aggravating circumstance. Garcia countered that his gainful employment, lack of criminal history, and remorse were mitigating circumstances and requested the court order a sentence of no more than forty-five years, in accordance with his prior plea agreement. Garcia also told the court that his attack on Barcenas was due to an unwanted advance Barcenas made on him. Garcia received the advisory sentence of fifty-five years executed in the Department of Correction. This appeal follows.

# Discussion and Decision

## I. Sufficiency of the Evidence

Garcia argues insufficient evidence was presented to support his conviction for murder, a felony. First, Garcia asserts that the State failed to rebut his claim of self-defense. Second, Garcia asserts that the jury could not reasonably find that he did not act in sudden heat. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). The Court neither reweighs the evidence nor assesses the credibility of the witnesses. *Kiplinger v. State*, 922 N.E.2d 1261, 1266 (Ind. 2010). If any reasonable juror could find the defendant guilty beyond a reasonable doubt when considering all the facts and inferences in favor of the conviction, the defendant's conviction will be affirmed. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

### A. Self-Defense

To convict a defendant of murder, the State must prove beyond a reasonable doubt that the defendant knowingly and intentionally killed another human being. Ind. Code § 35-42-1-1(1). A valid claim of self-defense of oneself is legal justification for an otherwise criminal killing. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Self-defense is defined by Indiana Code § 35-41-3-2(c) in relevant part as follows:

> (c) A person is justified in using reasonable force against any other person to protect the person…from what the person

reasonably believes to be the imminent use of unlawful force. However, a person:

> (1) is justified in using deadly force, and

> (2) does not have a duty to retreat;

> if the person reasonably believes that force is necessary to prevent serious bodily injury to the person... No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person…by reasonable means necessary.

[11] A defendant makes a valid claim of self-defense when he shows that he: 1) was in a place where he had the right to be; 2) did not provoke, instigate, or participate willingly in the violence; and 3) had a reasonable fear of death or great bodily harm. *McEwan v. State*, 695 N.E.2d 79, 90 (Ind. 1998). The State has the burden of negating at least one of the necessary elements to rebut a claim of self-defense. *Id.* If a defendant is convicted despite his claim of self-defense, the Court will reverse the conviction only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Taylor v. State*, 710 N.E.2d 921, 924 (Ind. 1999).

[12] Citing his own testimony, Garcia argues that Barcenas's threat caused him to fear death or great bodily harm and that he subsequently acted in self-defense. Appellant's Br. at 10. However, it is the use of *reasonable* force in self-defense that is justified by statute, not the use of any force. Ind. Code § 35-41-3-2(c). This is related to the requirement that the amount of force used to protect oneself is proportionate to the threat posed by the situation. *McKinney v. State*,

873 N.E.2d 630, 643 (Ind. Ct. App. 2007). Barcenas suffered stab wounds so numerous that they could not be counted by the pathologist performing his autopsy. Tr. Vol. II p. 137. Any one of four sets of injuries Garcia inflicted would have been fatal. Tr. Vol. II pp. 132-147. Moreover, Garcia suffered only minor cuts to his hands due to the knife slipping during his attack on Barcenas. Ex. Vol. 1, State's Exs. 11, 12, 77, 78. A reasonable juror could conclude that Garcia's use of force was unreasonably disproportionate to the threat posed.

[13] Additionally, Garcia has not shown that the State failed to rebut at least one element of the defense. *McEwan*, 695 N.E.2d at 90. Self-defense requires that the first response of a defendant who fears death or great bodily harm is an unwilling response. *Ballard v. State*, 808 N.E.2d 729, 732 (Ind. Ct. App. 2004). The State presented evidence from which a reasonable juror could conclude that Garcia willingly participated in the violence and that he willingly continued his attack on Barcenas long after the any threat posed had passed. Tr. Vol. II pp. 139-142. The State sufficiently rebutted Garcia's claim that he acted in self-defense in killing Barcenas.

*B. Sudden Heat*

[14] In the alternative, Garcia argues that the State failed to negate the presence of "sudden heat." Appellant's Br. at 14-15. Voluntary manslaughter is an inherently included lesser offense of murder, distinguished from murder by the presence of sudden heat. *Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998). A person commits voluntary manslaughter when he knowingly kills another human being "while acting under sudden heat." Ind. Code § 35-42-1-3(a).

Sudden heat is defined as provoked anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person. *Dearman v. State*, 743 N.E.2d 757, 760 (Ind. 2001). Whether sudden heat exists is a question of fact to be determined by a jury. *Jackson v. State*, 709 N.E.2d 326, 329 (Ind. 1999).

[15] Garcia claimed that Barcenas threatened him and provoked Garcia to fear for his life. Tr. Vol. III pp. 14, 28. It is within the province of the jury to decide the credibility of witness testimony. *Dillard v. State*, 755 N.E.2d 1085, 1090 (Ind. 2001). Therefore, the jury was free to evaluate Garcia's credibility regarding whether he attacked Barcenas out of fear. The brutal nature of the attack belies Garcia's argument that he acted in terror under sudden heat. Garcia requests this Court reweigh the evidence, which we will not do.

## II. Appropriateness of the Sentence

[16] Garcia argues that his sentence is inappropriate and requests appellate review and revision of the trial court's sentence, as authorized by Article 7, Section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Review of sentences under Appellate Rule 7(B) is deferential to the trial court's judgment. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or

persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Garcia bears the burden of establishing that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[17] The sentencing range for murder is between forty-five and sixty-five years. Ind. Code § 35-50-2-3. Sentences at the extremes of the lawful range are more often (but not always) clearly, plainly, and obviously inappropriate. *Williams v. State*, 782 N.E.2d 1039, 1050 (Ind. Ct. App. 2003). The trial court ordered Garcia to serve the advisory sentence for murder, fifty-five years.

[18] Garcia's 2011 plea agreement with the State was for forty-five years, at the low end of the sentencing range. Garcia contends that "principles of fairness" implied under Indiana Post-Conviction Rule 1(10) should guide how this Court determines whether the imposition of the more severe penalty was inappropriate. Appellant's Br. at 19. Post-Conviction Rule 1(10) provides in relevant part:

> (b) If a sentence has been set aside pursuant to this rule and the successful petitioner is to be resentenced, then the sentencing court shall not impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence.

[19] However, Post-Conviction Rule 1(10)(c) creates an exception for cases where 1) a conviction based upon a plea agreement is set aside; 2) the State subsequently

re-offers a sentence in accordance with the original terms of the plea agreement; and 3) the defendant ultimately fails to accept the State's re-offer. This exception applies to Garcia. He denied the State's re-offer of a forty-five-year sentence, and therefore, the restriction on imposing a more severe penalty established in Post-Conviction Rule 1(10)(b) does not apply. The trial court was not restricted from imposing the more severe sentence of fifty-five years by any rule of law.

[20] Whether Garcia's sentence is inappropriate, then, depends on his ability to provide compelling evidence that shines a positive light on the nature of his offense and on his character. *Stephenson*, 29 N.E.3d at 122. Under Appellate Rule 7(B), "character of the offender" refers in part to the trial court's balancing of aggravating and mitigating circumstances under Indiana Code Section 35-38-1-7.1. Here, the trial court considered Garcia's remorse as a mitigating circumstance, and the brutal nature of Garcia's offense as an aggravating circumstance. Tr. Vol. III pp. 97-98.

[21] Regarding the nature of the offense, Garcia does not dispute that the attack was brutally violent. Appellant's Br. at 19. Paradoxically, he argues that because the offense was brutal in nature, it was an "incomprehensible" act by Garcia, a man with no prior criminal history. *Id.* According to Garcia's testimony at sentencing, the extraordinarily violent nature of the offense was a result of his aberrant state of mind after Barcenas made an unwanted advance on him. *Id.* While the offense may have been uncharacteristic of Garcia's prior conduct and may have been motivated by a perceived advance from Barcenas, Garcia's

arguments do little to portray the nature of this offense in a positive light or reduce the aggravated nature of the attack. Garcia's offense was clearly not accompanied by restraint, regard, or lack of brutality. Ex. Vol. I, State's Exs. 57-67.

[22] From the nature of Garcia's offense, the Court learns much about the nature of Garcia's character. If the attack was instigated by an unwanted advance from Barcenas, this Court agrees with the State's conclusion that Garcia grossly overreacted with fatal consequences. Appellee's Br. at 21. Evidence that Garcia was employed and had no prior criminal history does not compellingly portray Garcia's nature in a positive light sufficient to overcome the trial court's judgment. Indeed, our review leads us to the conclusion that the trial court was generous in its judgment that Garcia's remorse was a mitigating factor. Tr. Vol. III pp. 97-98.

## Conclusion

[23] Garcia's conviction for murder was supported by sufficient evidence. Fifty-five years is the advisory sentence for murder, and Garcia has not established that the advisory sentence is inappropriate.

[24] Affirmed.

Kirsch, J., and Crone, J., concur.