## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 03 2019, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Law Office of Carlos I. Carrillo, LLC
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Erik J. Bryant
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lawrence A. Bell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 3, 2019

Court of Appeals Case No.
18A-CR-2453

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1804-F5-65

**Najam, Judge.**

# Statement of the Case

Lawrence A. Bell appeals his conviction and sentence for battery, as a Level 5 felony, and his adjudication as a habitual offender. Bell presents two issues for our review:

1. Whether the State presented sufficient evidence to support his battery conviction.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts and Procedural History

Bell suffers from bipolar disorder with psychotic features, paranoia, and schizophrenia. On April 2, 2018, Bell, then an inmate at the Tippecanoe County Jail, contacted jail personnel by intercom to request that he be moved to a different cell. Bell stated that if he was not allowed to move, "something bad was going to happen." Tr. at 18. A short time after his request to move was denied, Bell picked up a mop wringer and walked over to where his cell mate, David Bibbs, was watching television. Bell then, without any provocation, struck Bibbs over the head with the mop wringer, knocking Bibbs unconscious. Bell then struck Bibbs twice more with the mop wringer before two inmates intervened and persuaded Bell to stop.

The State charged Bell with two counts of battery, as Level 5 felonies, and criminal recklessness, as a Level 6 felony. The State also alleged that Bell was a

habitual offender. Following a bench trial, the trial court found Bell guilty as charged, but entered judgment of conviction only on the Level 5 felony count of battery, and the court adjudicated Bell to be a habitual offender. At sentencing, the trial court identified three aggravators and three mitigators and imposed a nine-year aggregate sentence, with five years suspended to probation. This appeal ensued.

# Discussion and Decision

### *Issue One: Sufficiency of the Evidence*

[5] Bell first contends that the State presented insufficient evidence to support his battery conviction. As our Supreme Court has stated:

> When an appeal raises "a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's 'exclusive province to weigh conflicting evidence.'" *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011) (quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)). We consider only the probative evidence and the reasonable inferences that support the verdict. *Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011). "We will affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *Joslyn*, 942 N.E.2d at 811 (quoting *Tobar v. State*, 740 N.E.2d 109, 111-12 (Ind. 2000)).

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018).

[6] To prove battery, as a Level 5 felony, as charged here, the State was required to show that Bell knowingly or intentionally touched Bibbs in a rude, insolent, or

angry manner by means of a deadly weapon. Ind. Code § 35-42-2-1 (2018). On appeal, Bell first maintains that the State did not prove that he was the man who committed the battery against Bibbs. Bell also claims that the State did not prove that he knowingly or intentionally committed the battery. We address each contention in turn.

*Identity*

[7] Bell contends that the State did not present any testimony to prove that Bell is the person who struck Bibbs. Indeed, our review of the transcript shows that, while Lieutenant Robert Hainje testified that, based on his review of surveillance footage of the battery, he identified Bell as "a suspect," he did not definitively state that Bell had committed the battery. Tr. at 8. And the State did not present any eyewitness testimony to identify Bell as the perpetrator.

[8] But Lieutenant Hainje's testimony was not the only identity evidence. As the State points out, the trial court watched surveillance video of the battery, and the court could have concluded from that video that Bell was the man who struck Bibbs with the mop wringer.[1] In addition, the State presented circumstantial evidence to prove that Bell was the perpetrator, including evidence that he had asked to move to a different cell over the intercom before the battery, as well as testimony that Bell could be seen holding the mop

---

[1] The surveillance video was not provided to this Court on appeal. Regardless, Bell does not dispute (not that he even could without the video) the State's contention that the video shows Bell committing the battery against Bibbs.

wringer shortly before the battery. We cannot say that the evidence is insufficient to prove that Bell is the person who committed the battery against Bibbs.

*Mens Rea*

[9] Bell also contends that, because he has a severe mental illness, the evidence does not show that he knowingly or intentionally committed the battery against Bibbs. In short, Bell maintains that the battery "was not explained by anything other than his mental illness." Appellant's Br. at 14. We cannot agree.

[10] First, Bell did not present an insanity defense at his trial. Second, even if Bell had pleaded insanity, it would not have been the State's burden to disprove Bell's mental illness to prove that he acted knowingly and intentionally in this instance. *See Cate v. State*, 644 N.E.2d 546, 548 (Ind. 1994).

[11] A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2. Here, the State presented evidence, including video surveillance recordings, showing that Bell threatened that something bad would happen if he could not move to a new cell and that Bell, without provocation, struck Bibbs, his cell mate, three times with a mop wringer before two other inmates stopped him from striking him a fourth time. This evidence is sufficient to prove that Bell knowingly and intentionally committed battery.

### Issue Two: Sentence

[12] Bell contends that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[13] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather

whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[14] Indiana Code Section 35-50-2-6(b) states that a person convicted of a Level 5 felony shall be imprisoned for a fixed term between one and six years, with an advisory sentence of three years. Indiana Code Section 35-50-2-8 states in relevant part that, where a person has been convicted of a Level 5 felony and found to be a habitual offender, the court shall sentence him to an additional fixed term that is between two years and six years. Here, the trial court identified as aggravating circumstances Bell's criminal history, his history of substance abuse, and his failed attempts at rehabilitation. The trial court identified as mitigating circumstances Bell's mental illness, the victim's wishes,[2] and Bell's family support. The trial court found that the aggravators outweighed the mitigators and imposed five years for the Level 5 battery, suspended to probation, with a four-year habitual offender enhancement, which is non-suspendible, to be executed in the Department of Correction.

---

[2] Bibbs wrote a letter to the trial court stating, in essence, that he did not think the State should have brought charges against Bell.

[15] Bell maintains that his sentence is inappropriate in light of the nature of the offense because the battery was "sporadic, random, and without reasonable explanation" and could only be explained by his severe mental illness. Appellant's Br. at 17. Bell asserts that jail personnel knew he was mentally ill and that his request to move "should have been granted for the safety of Bell and others." *Id.* As for his character, Bell points out the evidence showing that the battery was an "impulsive reaction" consistent with his mental illness, as well as his mother's testimony that he could be "kind" and "thoughtful" when he was "mentally stable." *Id.* at 19.

[16] We cannot say that Bell's sentence is inappropriate in light of the nature of the offense. After Bell struck Bibbs with a mop wringer, which weighed approximately eight pounds, and knocked Bibbs unconscious, he struck Bibbs twice more with the mop wringer. Bell only stopped because two other inmates intervened. Bibbs had no memory of the attack, and he experienced "throbbing pain" in his head for a week. Tr. at 37-38.

[17] Neither can we say that Bell's sentence is inappropriate in light of his character. Bell's criminal history is substantial. In particular, Bell has nine prior felony convictions and twenty-seven prior misdemeanor convictions, and his probation has been revoked five times. In addition, at the time Bell committed the battery against Bibbs, he was incarcerated awaiting trial on pending theft charges. Bell admitted to a history of substance abuse dating back to his teenage years, but he first sought substance abuse treatment in 2018. While Bell is clearly mentally ill, the trial court took that factor into consideration and gave

it mitigating weight. In light of Bell's extensive criminal history, we cannot say that his mental illness warrants a revised sentence.

[18] Affirmed.

Baker, J., and Robb, J., concur.