**Jimmy CARDINE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 483S145.**

Supreme Court of Indiana.

March 27, 1985.

C. Jerome Smith, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of murder, Ind.Code § 35–42–1–1(1). The

case was tried before a jury. Appellant was sentenced to a prison term of forty years.

Appellant raises·four issues on appeal: (1) whether the trial court erred in refusing to admit evidence of his treatment for alcoholism after his arrest; (2) whether the trial court erred in refusing to admit evidence of his alleged suicide attempt in February of 1982; (3) whether the trial court erred when it did not voir dire a member of the jury about her ability to remain fair after viewing State's Exhibits 6 and 7, photographs of the decedent; (4) whether the trial court erred in rejecting his tendered instructions relating to involuntary manslaughter.

These are the facts that tend to support the determination of guilt. On April 11, 1982, appellant and his girlfriend, Willie Mae Campbell, were at a party at the home of a friend. Both had been consuming alcohol. They eventually sat down at the kitchen table and began talking. Four other persons were in the kitchen with them. Then, appellant grabbed a knife off of the table and stabbed her four times. He claims that she reached for the knife first. Several of the witnesses observed appellant raise up off his chair and stab her. However, none of the witnesses observed who reached for the knife first. Immediately · after the stabbing, appellant left the house. The victim died shortly thereafter from multiple stab wounds.

I

At trial, appellant presented evidence that he had been drinking alcohol. He argues that the trial court erred in refusing to admit evidence of his treatment for alcoholism after his arrest. Two days after his arrest, he experienced delirium tremens. As a result, the Medical Officer of the Lake County Sheriff's Department treated him for several days. He contends that the evidence of his delirium tremens and subsequent treatment should have been admitted because it was relevant to his state of mind on the night of the offense.

Two states of mind were at issue by reason of the charge brought in this case, and they were the knowing and intentional ones defined in I.C. § 35–41–2–2. Appellant did not rely upon the defenses of voluntary intoxication or insanity. His defense was self-defense. Yet the excluded evidence invites the trier of fact to evaluate the diminishing influence of alcohol consumption upon appellant's mental capacity existing at the time of the incident. Indiana has not recognized the separate legal defense of diminished capacity. In *Cowell v. State* (1975), 263 Ind. 334, 331 N.E.2d 21, we said:

> "Defendant's tendered instruction embodies the concept of "diminished capacity" which is in use in several states. [Citation omitted] This term is synonymous with the idea of insanity as a condition of varying degrees. In Indiana we do not recognize degrees of insanity."

To the same effect is the more recent case of *Brown v. State* (1983), Ind., 448 N.E.2d 10, where the court held that expert testimony going to mental capacity was not admissible in the absence of the interposition of the defense of insanity. The excluded evidence was not relevant to the question before the trier of fact of whether appellant entertained the intent with which he was charged.

Furthermore, as stated, appellant relied upon the defense of self-defense. In support of that defense, he testified to events leading to the infliction of the fatal injuries, and described the operation of his mental faculties in detail. These in-court admissions under oath, invited and supported belief in the sufficiency of his perceptive powers at the time of the incident. The excluded evidence would have invited belief in their insufficiency. The most telling question for the jury to resolve was whether appellant was justified in employing deadly force. Because of the admissions and the focus of issues, it is apparent that the exclusion of the evidence of his treatment in the jail two days after the incident, could not have been prejudicial error.

## II

Appellant argues that the trial court erred in refusing to admit evidence of his alleged suicide attempt in February of 1982. He contends that the suicide attempt, in despair over his relationship with the victim, demonstrates his mental imbalance prior to the crime.

When a defendant raises the defense of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, limited to the extent that such conduct must be relevant to the issue of insanity. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. Here, however, appellant withdrew his defense of insanity before trial; therefore, the latitude in admitting other prior conduct became substantially limited.

At trial, appellant relied on the defense of self-defense. The suicide attempt, which occurred two months prior to the offense, was too remote and had little if any relationship to his defense. Consequently, any relevancy of the evidence of the suicide attempt ceased to exist when appellant withdrew his insanity defense. The evidence of the suicide attempt was properly excluded.

## III

Appellant argues that the trial court erred when it did not voir dire a member of the jury about her ability to remain fair after viewing State's Exhibits 6 and 7, photographs of the decedent. The photographs were admitted into evidence over appellant's objection that they were cumulative and inflammatory. Upon viewing the photographs, juror number nine reacted strongly.

The photographs were properly admitted. They were relevant because they depicted trauma sustained at the time of the attack, and they were admissible because their relevant quality was not outweighed by their tendency to inflame and impassion the jury against the defense. See *Owens v. State* (1982), Ind., 431 N.E.2d 108.

Once properly admitted, the extent to which the evidence legitimately influences the jury is not a proper subject for investigation by defense counsel or the trial court. Furthermore, the trial court is in the best position to determine whether the jury was improperly influenced by the evidence. Moreover, the trial court instructed the jury to set aside all sympathy and sentiment in reaching its verdict. There is nothing in the record related to this claim that would warrant disturbing the trial court's decision not to voir dire juror number nine.

## IV

Appellant argues that the trial court erred in rejecting his tendered instructions relating to involuntary manslaughter. Appellant's tendered instructions are as follows:

A person who kills another human being while committing or attempting to commit battery, commits involuntary manslaughter, a Class C felony.

A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery.

In resolving this issue it is important to note again that appellant relied upon the defense of self-defense. He testified that he was seated at the kitchen table with the victim and that there was a single knife on the table between them. They began a second round of an argument which had started three days before when they had had a fight and she had thrown him out of the house and she had called the police. According to him, she said she was going to do something bad to him and another, and "went for" the knife, whereupon he grabbed the knife and stabbed her in the shoulder. Also according to him, he *believed* that she was going to do something bad to him, and was going for the knife. He also stated that he had not had anything to drink the day before and had started drinking about 10:00 a.m. on the day of the stabbing. He testified that he was high, but rejected the propositions that he was drunk, had a drinking problem, or was prone to violence when drinking, although

admitting prior convictions for public intoxication. According to witnesses, he ran from the house immediately and was seen hurrying away. The knife was a large one, used in the kitchen, and the last thrust was so forceful that the entire blade was buried in the body and was broken off at the handle. In this testimony, appellant fully described his state of mind. It does not support an inference that he intended merely to touch her person in a rude, insolent or angry manner. There was therefore an in-court admission by appellant which negated any evidentiary basis for these instructions. They were properly refused.

The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.