ATTORNEY FOR APPELLANT
Leanna K. Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Brian L. Reitz
Deputy Attorney General
Indianapolis, Indiana

Lynn M. Deddens
Deputy Prosecutor
Dearborn County Prosecutor's Office

In the

# Indiana Supreme Court

FILED
Apr 23 2015, 3:54 pm
CLERK
of the supreme court,
court of appeals and
tax court

No. 15S00-1401-LW-40

CHARLES STEPHENSON,                                    *Appellant (Defendant)*,

v.

STATE OF INDIANA,                                         *Appellee (Plaintiff)*.

Appeal from the Dearborn Circuit Court, No. 15C01-1205-MR-1
The Honorable James Humphrey, Judge

**April 23, 2015**

**Dickson, Justice**.

Convicted following a jury trial for the April 2012 robbery and murder of 67-year-old Leigh Jennings in Aurora, Indiana, the defendant, Charles R. Stephenson, brings this direct appeal to challenge his convictions and resulting sentence of life imprisonment without parole. For the reasons expressed below, we affirm both the convictions and sentence.

Because the defendant was sentenced to life imprisonment without parole, this Court has

mandatory and exclusive jurisdiction over this appeal. Ind. Appellate Rule 4(A)(1)(a). The defendant asserts the following appellate claims: (1) insufficient evidence of robbery; (2) insufficient evidence to support the sentence of life imprisonment without parole; (3) erroneous admission of suicide attempt evidence; (4) erroneous admission of evidence regarding the defendant's appearance after the victim's apparent death; and (5) sentence inappropriateness.[1]

## 1. Sufficiency of Evidence of Robbery

The defendant challenges the sufficiency of the evidence supporting the robbery conviction. He argues that such conviction required proof that the physical violence perpetrated on Leigh Jennings was part of a plan to take her property and not just part of the murder.

In reviewing a claim of insufficient evidence, an appellate court will affirm if, considering only the probative evidence most favorable to the verdict and any reasonable resulting inferences and without reweighing the evidence or judging witness credibility, it finds that a reasonable finder of fact could find each element of the crime proven beyond a reasonable doubt. Baker v. State, 968 N.E.2d 227, 229 (Ind. 2012); Grace v. State, 731 N.E.2d 442, 445 (Ind. 2000).

The defendant was convicted of Robbery as a Class A Felony. This offense is defined as follows:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; or
> (2) by putting any person in fear;
> commits robbery, a Class C felony. However, the offense is a . . . Class A felony if it results in serious bodily injury to any person other than a defendant.

Ind. Code § 35-42-5-1 (2008).

Leigh Jennings was found brutally bludgeoned to death in her kitchen. She died from blunt force head trauma, and her injuries were consistent with blows from the cast iron skillet

---

[1] Separate and in addition to these issues, the defense presented additional matters for the first time at oral argument. Because these were not raised in his briefs and not fully subject to the adversarial process, we decline to consider them.

and pepper mill found hanging in her pantry with blood drips on the wall behind. Calculated from her body decomposition rate, March 29, 2012, was the probable date of death. Jennings was a 67-year-old woman who eschewed modern medicine, distrusted banks, and was suspicious of the government. She kept cash at her house in two safes. Both safes were closed, but no money was found there or elsewhere in her home except for a twenty dollar bill in the kitchen and some change in a jar. One of Jennings's safes contained two handwritten promissory notes signed by the defendant for loans totaling $5,000 made in October and December of 2011. On past occasions when the defendant had borrowed money from Jennings, he would stay in the front of her house and she would return from a back bedroom with various denominations of twenties and hundreds, which the defendant suspected came from a safe. Police discovered at the murder scene a Papa John's pizza box in Jennings's kitchen labeled with the names of Jennings and the defendant. Jennings had called the defendant on March 29 at 6:55 pm and then telephoned Papa John's Pizza at 7:09 pm. Several text messages were exchanged between the defendant and Jennings until March 29. The defendant's vehicle was seen at Jennings's home on March 29. The defendant was deeply in debt and several of his creditors were threatening imminent legal action absent immediate repayment. Personally confronted by an attorney for one lender demanding payment for a bounced check by March 28, 2012, the defendant had sought a two-day extension for repayment until March 30. On Friday morning of that date, the defendant delivered a one thousand dollar money order to the attorney for the lender. When questioned about the source of the money, the defendant said that he had borrowed it from his friend John Rittenour, who denied loaning defendant the money. On May 9, police discovered the defendant on his bed, covered in blood from an apparent suicide attempt. The defendant had left a suicide note written to his son, emphasizing his financial distress and declaring that he had nothing to do with Jennings's murder. A few days later, it was determined that the defendant's DNA was on the pepper grinder and that he could not be excluded from the DNA found on the skillet. Jennings's blood was found on documents inside her back bedroom safe, and the defendant's fingerprint was found on a promissory note inside another safe.

The defendant contends that, to convict him of robbery, it was necessary for the evidence "to prove the physical violence perpetrated on Jennings was part of a plan to take her property and not just part of the murder." Appellant's Br. at 21. Drawing on language in Buggs v. State,

3

844 N.E.2d 195 (Ind. Ct. App. 2006), *trans. denied*, the defendant argued that, because an entire robbery could not occur after the victim was dead, the State in the present case should be required to show that the murder was used to effectuate the robbery, rather than the robbery being an afterthought after the murder.

The defense points to a lack of evidence that the defendant went to Jennings's home with any intent to murder or violently kill her to take money. He argues that the extreme amount of force used shows this to be a crime of passion and not a robbery attempt. He stresses that there is no evidence to support an inference that the taking of Jennings's property was effectuated by the use of force against her while she was still alive.

We disagree. There is no evidentiary support for the defense theory that the defendant first murdered Jennings and only thereafter decided to take her property. To the contrary, the evidence and its reasonable inferences show that the defendant, deep in debt, distraught, and desperate for cash, (1) went to Jennings home purposefully to obtain money and, either in response to her refusal to give it to him or in the absence of such refusal, (2) struck her in the head multiple times, killing her, and then (3) took cash from her safes. Obtaining Jennings's money was the defendant's objective. Whether the murder was committed in the course of the robbery or after its completion does not undermine the correctness of the robbery conviction. *See* <u>Robinson v. State</u>, 693 N.E.2d 548, 554 (Ind. 1998) ("The record contains abundant evidence that the taking of Hobbs' property was effectuated by the use of force against him while he was still alive. That Robinson waited until after Hobbs' death actually to take the property is of no moment."). While a robbery conviction may not be proper when a robbery both commences and concludes on a dead person, the crime is committed when part of the robbery occurs before the victim's death and the other part occurs after the death. *Id*.

The probative evidence in this case was sufficient for a reasonable jury to conclude beyond a reasonable doubt that the defendant knowingly or intentionally took property from another person by using or threatening the use of force, thus committing the offense of robbery.

## 2.  Sufficiency of Evidence for Sentence of Life Imprisonment Without Parole

Advancing a similar rationale, the defense contends that the evidence was insufficient to prove the charged statutory predicate for the sentence of life imprisonment without parole.  The sole statutory aggravating circumstance charged was that the defendant "committed the murder by intentionally killing the victim while committing or attempting to commit . . . Robbery."  Ind. Code § 35-50-2-9(b)(1)(G) (2008).

The defendant alternatively argues that the State failed to prove the charged aggravating circumstance because either (1) there was insufficient evidence to convict him of robbery, or (2) even if the robbery conviction is upheld, the nature of the murder and its simultaneous relation to the robbery were insufficient evidence to prove the statutory aggravating circumstance required here for the sentence of life imprisonment without parole.  Having already found the evidence sufficient to prove robbery, we address only the defendant's second alternative claim—that the life without parole statute "specifically requires that the defendant <u>intentionally</u> killed the victim <u>while</u> committing the robbery."  Appellant's Br. at 29 (emphasis in original).

In light of the nature and extent of the brutal injuries inflicted in the murder of Jennings, the evidence was sufficient to prove that the killing was intentional.  The defense does not seriously challenge this conclusion but rather focuses its argument on the claimed lack of proof that the murder was committed *while* committing or attempting to commit robbery.  He urges that just because a robbery and a murder were committed does not satisfy the statutory predicate for a sentence of life imprisonment without parole, but rather "the State must present evidence that the defendant actually killed the victim *while* committing the robbery."  *Id.* (emphasis added).  He argues that, if he killed Jennings, it was a crime of passion precipitated by his angry reaction to Jennings's refusal to loan him money, that there was no evidence that he went to her home intending to kill and rob her, that he brought no weapons, and that his past history showed a likelihood of getting what he wanted using only words.  He thus contends that the robbery was sequential to the murder rather than the intentional killing occurring *while* the robbery was attempted or committed and that a sequential occurrence is insufficient to satisfy the statutory aggravating circumstance.

In reviewing the sufficiency of the evidence in support of a statutory aggravator under this statute, we use the same standard that is used for determining the sufficiency of the evidence to convict. Washington v. State, 808 N.E.2d 617, 626 (Ind. 2004). "We examine the evidence tending to support the verdict and all reasonable inferences therefrom without weighing the evidence or assessing witness credibility," and then we determine if there is substantial evidence of probative value from which the jury could find the existence of the aggravator beyond a reasonable doubt. *Id.*

That the defendant murdered Leigh Jennings is not disputed. That he committed robbery is confirmed in Issue 1 above. To qualify the defendant for life imprisonment without parole, the statute requires that the murder be committed "while" committing or attempting to commit robbery. Ind. Code § 35-50-2-9(b)(1)(G). Applying the standard of review, the issue is thus whether there is substantial evidence of probative value from which the jury could have found that the murder was committed *while* committing the robbery. The defense portrays the evidence as indicative of the crimes being committed consecutively. Resolution of this claim, however, rests on whether the jury *could find* the aggravator adequately proven.

The evidence as a whole shows that the defendant, under extreme financial stress, knew that Jennings kept large amounts of cash in her home, visited Jennings there, bludgeoned her to death, and left with money taken from her home. These facts and their reasonable inferences inescapably lead us to conclude that a reasonably jury could have concluded that the murder was committed while committing the robbery. We find that the evidence was sufficient to prove the charged statutory predicate for the sentence of life imprisonment without parole.

### 3. Admission of Suicide Attempt Evidence

The defendant argues that the trial court erred by admitting evidence regarding his attempt to commit suicide two days after police questioned him about the murder. He contends that such evidence was inadmissible because it was not relevant to the Jennings murder, and,

6

even if relevant, it should have been excluded under Indiana Evidence Rule 403 because any probative value was outweighed by the prejudicial impact. The State responds that the defendant failed to timely object and that the admission was not error at all, let alone fundamental error.[2]

The defendant's suicide attempt was initially mentioned at a bench conference out of the presence of the jury. The trial court conducted a bench hearing to consider the defense's objections and motion to exclude from evidence an audio recording and transcript of the defendant's conversation with Indiana State Police Officer Tracy Rohlfing. The challenged recording and transcript did not include any mention of the suicide attempt. And when such attempt was mentioned during the bench hearing testimony of the officer, the defense voiced no objection. After the bench hearing concluded and the jury trial resumed, the prosecution resumed the direct examination of Officer Rohlfing. When the officer's narrative appeared to reach a description of his encounter with the defendant, defense counsel interrupted and asked to approach the bench. It was at this time that defense counsel first expressed concern over the admissibility of the defendant's attempted suicide into evidence, stating:

> We're concerned that the witness is going to possibly blurt out about the suicide attempt and, at this point, we're thinking that would not be admissible, it would be objectionable, so we would just like the prosecutor not to—to tell the witness not to go there unless they got permission from the Court.

Tr. at 1081. The trial court allowed the State to proceed but directed that it not get into the attempted suicide evidence so that the defendant's motion to exclude that evidence could be considered outside the presence of the jury at the upcoming break in the trial. *Id.* at 1081–82. The admissibility of the suicide attempt evidence was later discussed with the trial court outside the presence of the jury on four occasions. *Id.* at 1095, 1229–1232, 1238–40. In the first, the defense primarily argued lack of relevancy but made an isolated statement that "the act of committing suicide is itself a bad act." *Id.* at 1095. Later, in addition to lack of relevancy, the defense asserted "this would be described as a prior bad act and that . . . should be inadmissible." *Id.* at 1231. During the last discussion, the defense asserted "we would just renew our objection that we've already stated under relevancy." *Id.* at 1240. During these exchanges, the defense did not

---

[2] In its Statement of the Issues, Summary of the Argument, and specific argument heading, the State couches its argument in terms of "fundamental error." Appellee's Br. at 1, 12, and 21. We find in the context of its argument, however, that the State also directly addresses the defense claims of lack of relevancy and probative value versus unfair prejudice.

elaborate on its "prior bad act" objection, but as to relevancy, it argued that evidence of his attempted suicide was irrelevant because the suicide note he wrote expressly maintained his innocence in the murder. While advocating for the admission of evidence describing the apparent attempted suicide, the State objected to the admission of the suicide note itself. The trial judge eventually permitted both the suicide attempt testimony accompanied by the suicide note exhibit. The jury heard testimony from the officer and other witnesses who came upon the defendant after his self-inflicted wounds to his wrists, and the jury was shown the suicide note.

The State argues on appeal that the defendant's failure to object to Officer Rohlfing's bench hearing mention of the attempted suicide operated to let "the proverbial cat . . . out of the bag." Appellee's Br. at 23. It argues that Stephenson's future objections to the suicide attempt evidence came too late, as "the objected-to evidence [was] merely cumulative of unobjected-to evidence and cumulative evidence is not reversible error . . . ." *Id.*

It is correct that a failure to timely object to the erroneous admission of evidence at trial will procedurally foreclose the raising of such error on appeal unless the admission constitutes fundamental error. Davis v. State, 598 N.E.2d 1041, 1048 (Ind. 1992). *See* Johnson v. State, 734 N.E.2d 530, 532 (Ind. 2000); Marcum v. State, 725 N.E.2d 852, 863 (Ind. 2000). The requirement that evidentiary objections be made timely is for the purpose of permitting a trial court to take appropriate preventative or corrective action during trial. Godby v. State, 736 N.E.2d 252, 255 (Ind. 2000). *See also* Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010); Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000). In the present case, the defense objections were fully expressed to the trial court at the time the challenged evidence was to be presented to the jury. Had the trial court been persuaded by the defense's objections, the trial court could have taken preventative action by excluding the evidence before it was heard by the jury. We decline to find that the defense waived its objections to the suicide attempt evidence by not raising them at the hearing on an unrelated issue out of the jury's presence.

On appeal, the defendant contends that evidence of his suicide attempt should have been excluded because (1) it was not relevant and (2) the danger of unfair prejudice substantially outweighed its probative value.

As to relevancy, the defendant contends that the evidence does not show any link, other than timing, between the suicide attempt and the charged offenses of robbery and murder. He argues that the attempt was not relevant to a consciousness of guilt but rather showed that the defendant was in the midst of financial crises and that the pressure of his mounting debt "became the impetus behind his suicide attempt." Appellant's Br. at 41. This asserted motive was arguably supported by the accompanying suicide note, in which the defendant expressly denied that he killed Leigh Jennings and appeared to direct that his life insurance proceeds be used to repay "people who trusted me with their money." State's Ex. 185, Volume of Ex. at 799. The State responds that the defendant's financial problems were the motivation for the defendant's robbery and murder in this case and that the suicide attempt was relevant as evidence of a guilty conscience and as evidence of the defendant's financial stress.

The defense acknowledges the absence of Indiana case law directly on point and that "other jurisdictions generally do allow evidence of suicide attempts." Appellant's Br. at 38. One reason other states employ for allowing this type of evidence, the defendant admits, is that many "states acknowledge the general rule that 'evidence the accused attempted to commit suicide is relevant as a circumstance tending . . . to show consciousness of guilt.'" *Id.* (quoting 1 Wharton's Criminal Evidence § 159 (14th ed. 1985)). The defendant nevertheless directs our attention to two Indiana cases in which suicide attempt evidence was excluded, Cardine v. State, 475 N.E.2d 696 (Ind. 1985), and Kien v. State, 782 N.E.2d 398 (Ind. Ct. App. 2003), *trans. denied.* In addition, the defendant cites cases from other states that caution courts to carefully consider the probative value of attempted suicide evidence. *See* State v. Onorato, 762 A.2d 858 (Vt. 2000) and State v. Mann, 625 A.2d 1102 (N.J. 1993).

In both Cardine and Kien, the exclusion of suicide attempt evidence was fact-sensitive and did not announce a general proscription. In Cardine, the defendant was seeking to admit evidence of his attempted suicide in an effort to "demonstrate[] his mental imbalance prior to the crime." 475 N.E.2d at 699. Noting that the defendant was arguing self-defense, however, the Court observed that under an insanity defense, attempted suicide evidence may be probative, but that as to a claim of self-defense, the "suicide attempt, which occurred two months prior to the

9

offense, was too remote and had little if any relationship to [the defendant's] defense." *Id.* In Kien, the Court of Appeals found that the admittance of two suicide notes was improper because the State only offered the evidence to impeach the defendant on a collateral issue. 782 N.E.2d at 409. Neither Cardine nor Kien hold that attempted suicide evidence is generally inadmissible as being irrelevant in Indiana. Instead, both cases are a rather straightforward application of Indiana Evidence Rule 401: "Evidence is relevant if: (a) it has a tendency to make any fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

In addition to its relevancy argument (that the suicide attempt reflects his acute financial desperation and thus his possible motive for the robbery and murder), the State also argues that it showed the defendant's consciousness of guilt. Other than the suicide attempt itself, the State points to no other evidentiary facts that suggest the defendant's consciousness of guilt was a factor in his attempted suicide. In fact, in his suicide note, the defendant expressly and repeatedly denied killing Leigh Jennings. We decline to find that the mere existence of an attempted suicide, without more, is relevant evidence of a person's guilty conscience about committing a charged crime, especially a charged crime which the person expressly disavows when the suicide is attempted. Because we conclude that the attempted suicide evidence was relevant to the issue of motive for the ensuing robbery and murder, however, its tenuous use as evidence of consciousness of guilt does not undermine its admissibility.

Other than relevancy, the only error in the admissibility of the suicide attempt evidence asserted by the defendant on appeal is that such evidence was inadmissible because its probative value was substantially outweighed by the risk of unfair prejudice. Ind. Evidence Rule 403. The defendant on appeal does not direct us to any point in the record where this objection was made at trial, and we find none. As noted above, in addition to relevancy, the defense at trial did twice allude to a "prior bad act" objection, but a prior bad act objection is not one of the defendant's enumerated issues on appeal. The claim is not asserted in his list of alleged trial court errors, Appellant's Br. at 38–45, nor in his Statement of the Issues, *id.* at i–ii, 2, nor in his Summary of the Argument, *id.* at 20. The defendant does make a brief mention of Evidence Rule 404(b), but there is no assertion of trial court error on this ground. *Id.* at 37. Notwithstanding this failure to

10

adequately present this issue on appeal or at trial, we also find it lacking in merit. The evidence was offered by the State to show motive and consciousness of guilt, and not as propensity evidence. Evidence Rule 404(b)(1) declares that otherwise relevant evidence is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The prosecution did not contend that the defendant's acts in committing robbery and murder were "in accordance with" the defendant's character shown in his suicide attempt. Furthermore, evidence of a prior crime, wrong, or other act may be used to show motive. Evid. R. 404(b)(2). We decline to grant appellate relief based on any claim of trial court error with regard to Rules 403 or 404(b).

We find no error in the admission of the suicide attempt evidence.

### 4. Admission of Evidence of Defendant's Appearance

The defendant also contends on appeal that the trial court erred in allowing testimony over objection regarding his appearance the day after the murder. Specifically, the defense challenges the admission of testimony by witness David Steele in describing the defendant as appearing "kind of euphoric, like, you know, like, you know, sense that he had accomplished something . . . ." Tr. at 1303. On appeal, the defendant argues that such statements by the witness were "far too speculative," misled the jury, and operated to "infer an opinion of guilt and an opinion of intent." Appellant's Br. at 47.

At trial, however, none of these objections were made. The only objection was made immediately in advance of the testimony, when the defense approached the bench and expressed its concern that, in answering State's question about "how [the defendant] appeared," the witness would refer to drugs, alcohol, or other bad acts. Tr. at 1302–03. The trial court never had an opportunity to consider the evidentiary objections now raised on appeal. A claim of evidentiary error may not be raised for the first time on appeal. Davis, 598 N.E.2d at 1048. It must be presented at trial to permit appropriate corrective action. Godby, 736 N.E.2d at 255. The defendant may not here claim error based on grounds not asserted at trial. The defendant does not claim, nor do we find, that this admission of testimony describing the defendant as appearing euphoric

11

or particularly satisfied with an accomplishment amounted to fundamental error such as to override the procedural default.

## 5.  Appellate Review of Sentence Appropriateness

The defendant seeks appellate review and revision of his sentence from life imprisonment without parole to a term of years.[3]  Such relief is available if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).

The defendant contends that the nature of the offense, while gruesome, was a "crime of passion and not a cold-blooded killing."  Appellant's Br. at 32.  He asserts that he had been essentially a non-violent man who "lived a passive, law-abiding life for almost sixty years" until the murder and robbery of Jennings, thus exhibiting "redemptive character traits."  *Id*. at 34.  The defendant points to his behavior in this investigation, which was "very cooperative," as well as the testimony of friends and family, who described him "as a good family man who disciplined his children with a stern word and never violence."  *Id.* at 33.  His friends and family also described him as an "eternal optimist," and someone who "abhorred violence, especially against women."  *Id*.  Finally, the defendant points to his lack of a criminal record as a mitigating circumstance.  *Id*.

But, as noted by the State, the evidence also supports an opposing character assessment. It asserts that he "relied on his charisma to mooch off of others."  Appellee's Br. at 20.  The defendant was heavily in debt to friends, family, the elderly, and military veterans, and he had incurred some of this debt through fraud.  He had borrowed large sums of money from friends and others by saying he was going to invest the money for them, but evidence indicated that he frequently failed to return their investment or repay them.  Some of his family members conceded that he was lazy and "leveraged" other family members.  Tr. at 1836.  The evidence does not depict a defendant who had otherwise exhibited substantial virtuous character.

---

[3] For the offense of Murder, a person may be sentenced to a fixed term of years between 45 and 65 years.  Ind. Code § 35-50-2-3(a) (2008).

The defendant urges that for this crime of passion, in light of his redemptive character traits, a life sentence "should be deemed inappropriate" and replaced with a term of years sentence. Appellant's Br. at 34.

Our authority to review and revise a criminal sentence requires that we first give "due consideration of the trial court's decision." App. R. 7(B). Here a jury of twelve citizens, given a choice between either a sentence of life imprisonment without parole or a term of years, unanimously elected to recommend life imprisonment without parole. The trial judge agreed and sentenced the defendant accordingly. "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character).

In this case, we find that sentence revision is not supported by the nature of the offense, nor by conflicting character traits of the offender. The evidence does not present a sufficiently compelling basis to override the decision of the jury and the trial court.

**Conclusion**

We affirm the defendant's convictions for the robbery and murder of Leigh Jennings, and we affirm his sentence of life imprisonment without parole.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

13