## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven R. Collins, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | January 15, 2020 <br><br> Court of Appeals Case No. 19A-CR-1852 <br><br> Appeal from the Wabash Circuit Court <br><br> The Honorable Robert R. McCallen, III, Judge <br><br> Trial Court Cause No. 85C01-1803-F5-244 |

**Altice, Judge.**

## Case Summary

[1] Steven Collins appeals from his conviction and sentence for Level 5 felony sexual misconduct with a minor. He contends both that the evidence was insufficient to support his conviction and that his sentence is inappropriate.

[2] We affirm.

## Facts[1] & Procedural History

[3] A.J. (Child) and Collins's daughter S.C. became best friends in 2016 when they were in a seventh-grade play. Thereafter, they regularly spent the night at each other's homes on the weekends. Child turned fourteen years old in November 2017, before the events in question.

[4] On the evening of Saturday, November 25, 2017, Child came to Collins's home to spend the night with S.C. Child's mother dropped her off around 11:00 p.m., after Child attended a family celebration in a nearby town. S.C. and Collins were in the living room when she arrived, and Child sat down to watch television with them after taking her belongings to S.C.'s bedroom. The three "hung out and relaxed" for a couple hours. *Transcript Vol. 2* at 156.

[5] Around 1:30 a.m., S.C. got up and said she was going to make the bed in her room and charge her cell phone. Once S.C. left, Collins, who was thirty-seven years old, scooted closer to Child on the couch and asked her if she "wanted to

---

[1] The Statement of Facts provided in Collins's appellate brief is wholly inadequate, providing little to none of the facts relevant to the issues presented. Counsel is directed to review Indiana Appellate Rule 46(A)(6).

do anything." *Id.* at 158. Child was confused. He then took her right hand and placed it "on his crotch over his basketball shorts." *Id.* at 159. Child could feel that S.C.'s penis was erect. Child then immediately got up and went into S.C.'s room, where she found S.C. on her phone lying in bed. Child lay down next to her, too scared to say anything to S.C. Child sent several text messages to her boyfriend, but he did not respond because he was likely asleep. She also unsuccessfully sent a message to a friend who lived across from S.C.

[6] After several minutes of trying to reach others, Child told S.C. what had happened. S.C. responded that Collins "probably didn't mean it" and that "probably wasn't his intention." *Id.* at 162. Child remained numb and in shock at that point and did not want to remain in the home, so she sent a text message to D.C., a boy she knew would be in the neighborhood that night. She asked D.C. to meet her "because something bad happened, and [her boyfriend] wasn't responding, and [she] was freaking out." *Id.* at 164. D.C. agreed to meet her at a nearby park.

[7] In the meantime, Collins sent a text message to Child via Instagram. A screenshot of the text exchange indicates the following after Collins initiated contact with Child around 2:00 a.m.:

> Child: What?
>
> Collins: I have something to say
>
> Child: What?
>
> Collins: To your face

Child:       I'm not getting up

Collins:     Fine

Child:       I'm not going out there

Collins:     Ok

*Exhibit Index* at 5.[2]

[8]     Once D.C. indicated that he was leaving to meet her, Child quickly changed in the bedroom into long pajama pants and a sweatshirt because it was cold outside. She then she ran through the house and out the front door without stopping for her shoes. Collins was still in the living room on the couch, where he usually slept. Child ran down the street, and Collins chased after her, wearing only shorts and a t-shirt. When he caught up to Child, Collins grabbed onto her sweatshirt and started apologizing. Child convinced him that she was not going to run, so he let go of her and continued to walk alongside her, pleading: "Just come back to the house. I'm sorry I broke that trust. I didn't mean to. Please just come back to the house." *Transcript Vol. 2* at 171.

[9]     Once Child saw D.C., she sprinted toward him and wrapped her arms around him. Child, seemingly terrified, stood behind D.C. as Collins approached and identified himself. D.C. asked what had happened, and Child whispered to him to just wait. Collins responded, "I don't know what happened. Come on. Let's just go back to the house." *Id.* at 174. Collins then walked back to his

_____

[2] Later that morning, Collins blocked Child on Instagram, resulting in the messages being deleted. But Child had already taken a screen shot of the messages within minutes of them being sent.

house.  Child stayed with D.C. and told him what had happened.  D.C. gave Child his shoes, as she was barefoot, and he took her with him to his friend's house.  Child's mother picked her up later that morning, and they went to the local sheriff's office the next day to make a report.

[10]  On March 6, 2018, the State charged Collins with Level 5 felony sexual misconduct with a minor.  Collins was convicted as charged following a two-day jury trial.  On July 15, 2019, the trial court sentenced him to a term of three years with six months suspended to probation.  Collins now appeals, challenging both his conviction and sentence.  Additional information will be provided below as needed.

## Discussion & Decision

### 1.  Sufficiency of the Evidence

[11]  Recognizing that Child's testimony, if believed, is sufficient to support his conviction, Collins argues that the incredible dubiosity rule applies here.

> The incredible dubiosity rule allows the court to impinge upon the [trier of fact's] assessment of witness credibility when the testimony at trial is so contradictory that the verdict reached would be inherently improbable.  For the incredible dubiosity rule to apply, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone.

*Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015).  The witness's testimony must be wholly uncorroborated.  That is, we will only impinge on the jury's duty to

judge witness credibility "where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt." *Id.* at 755 (emphases in original) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)).

[12] Here, Child's testimony was unequivocal that Collins placed her hand on his clothed erect penis while the two were alone in the living room. In addition to Child's unwavering testimony, S.C. and D.C. testified that Child made consistent allegations to each of them shortly after the incident. Moreover, the text exchange between Collins and Child, initiated by Collins within thirty minutes of the alleged misconduct, constitutes some evidence of his guilt, as does his action of chasing after her when she ran out the front door. As Collins followed her, pleading his case, Child sprinted barefoot in the darkness towards D.C., seeking protection from Collins. D.C. testified that Child "seemed terrified" as she ran in "a full out sprint" toward him. *Transcript Vol. 2* at 214. In sum, Collins's reliance on the incredible dubiosity rule is wholly misplaced, and the State presented ample evidence to support his conviction.

## 2. Sentence

[13] Collins also challenges the sentence imposed by the trial court as inappropriate. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate

sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[14] For a Level 5 felony, Collins faced a sentencing range of one to six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b). The trial court imposed the advisory sentence of three years and suspended six months of the sentence.

[15] We cannot agree with Collins that his partially-suspended advisory sentence is inappropriate. The nature of the offense, as reflected in the sentence imposed, was not particularly egregious for a Level 5 felony sexual misconduct offense. Collins placed Child's hand on his clothed, though erect, penis for a matter of seconds. He chose to do this, however, to his daughter's best friend while his three children were in the same house, and he then chased after Child when she

frantically ran from the house to the safe arms of D.C. The effects of the offense have been severe for Child, as she attempted suicide and had to withdraw from school. Further, with regard to his character, Collins has a criminal history consisting of five Class A misdemeanor convictions (one for check deception and four for driving while suspended) and has had probation revoked on one occasion.

[16] The trial court found Collins's criminal history only slightly aggravating and weighed it against the hardship incarceration would pose on his three dependent children.[3] The trial court also noted the effect the offense had on Child. Ultimately, the trial court imposed the three-year advisory sentence and suspended six months. Although Collins does not have a substance abuse problem, the trial court also ordered Recovery While Incarcerated for him so that Collins could obtain "a potential time-cut" upon completion. *Transcript Vol. 3* at 140. The sentence crafted by the trial court was not inappropriate in light of the nature of the offense and Collins's character.

[17] Judgment affirmed.

Robb, J. and Bradford, C.J., concur.

---

[3] At the time of the offense, Collins was an unemployed widow living with his three minor children (then ages fourteen, twelve, and one and one-half years old) and his sister-in-law. His sister-in-law works outside the home and will continue to live with and provide for the two oldest children while Collins is incarcerated. The youngest child has been taken into custody by her mother, who is not the mother of the older children.