## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2020, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

John R. Millikan
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dakota M. Probst,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 5, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2118<br><br>Appeal from the Dearborn<br>Superior Court<br><br>The Honorable Sally A.<br>McLaughlin, Judge<br><br>Trial Court Cause Nos.<br>15D02-1809-F6-345, 15D02-1811-F6-440, 15D02-1812-CM-865 |

**Altice, Judge.**

**Case Summary**

[1] Dakota Probst pleaded guilty under three separate cause numbers to Level 6 felony criminal confinement, Level 6 felony possession of methamphetamine, and Class A misdemeanor battery. The trial court sentenced him to an aggregate term of 1820 days in prison with 910 of those days suspended to probation. Probst contends on appeal that his aggregate sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm.

## Facts & Procedural History

[3] Raised by his grandparents, Probst dropped out of school in the ninth grade and then began working when he was sixteen years old. In May 2017, Probst was adjudicated a delinquent child for operating a vehicle without ever receiving a license and for the illegal taking of a wild animal, both misdemeanors if committed by an adult. Probst explained that this adjudication was the result of him driving another individual's vehicle while his friend shot at a deer through a window of the vehicle.

[4] Probst turned eighteen on June 28, 2018 and became a daily methamphetamine user around this time, in addition to him already being a regular marijuana user. He continued to live with his grandparents, along with his girlfriend Roxann Boatman.

[5] On September 4, 2018, during a verbal argument, Boatman told Probst that she was leaving him. Probst followed her as she walked up to the bedroom that

they shared and kicked down the bedroom door. He was "freaking out" and "started pushing [her] and choking [her]." *Transcript* at 60. She managed to get away and run downstairs and then out to her truck. Probst followed and grabbed the truck keys from her, telling her that she was not leaving. He forcefully held her by the arms, struck her in the face, and pushed her into the side of her truck, causing a dent. During the altercation, he began choking her again and struck her multiple times. As she tried to get away from him, he bit her on the back of her shoulder and elsewhere. At some point, Boatman ended up on the ground, and Probst drove the truck closer to the house. Boatman then called her mother for help, telling her "if she didn't come and get me, that I think he was going to kill me[.]" *Id*. at 61. Shortly thereafter, Dearborn County Sheriff's Department Deputy Brian Weigel responded to the scene. As Deputy Weigel spoke with Boatman, Probst approached "angry and also yelling." *Id*. at 74. Deputy Weigel opined that Probst was "acting as somebody using meth would act." *Id*. Probst was arrested and charged under cause number 15D02-1809-F6-345 (Cause F6-345) with Level 6 felony criminal confinement, Level 6 felony strangulation, Class A misdemeanor battery, and Class B misdemeanor criminal mischief. He was released on bond within a week.

[6] Probst continued to use methamphetamine daily upon his release. On November 15, 2018, he became angry with his new girlfriend, Kaitlyn Lack. When he began raising his voice and "kind of knocked [her] face", Lack pushed him away from her. *Id*. at 78. Probst then grabbed her by the arms and bit her

on the back of the shoulder. On December 3, 2018, the State charged Probst under cause number 15D02-1812-CM-865 (Cause CM-865) with Class A misdemeanor battery.

[7] Before Cause CM-865 was filed but while Probst was still out on bond under Cause F6-345, a vehicle in which Probst was a passenger was pulled over for a traffic stop on November 23, 2018. The officer smelled marijuana upon approaching the vehicle occupied by Probst and the driver. Subsequently, officers found marijuana and various Oxycodone pills in the vehicle. Probst also had Oxycodone and methamphetamine on his person. The State charged Probst under cause number 15D02-1811-F6-440 (Cause F6-440) with Level 6 felony possession of methamphetamine, Class B misdemeanor possession of marijuana, and Class A misdemeanor possession of a controlled substance.

[8] On June 19, 2019, the State and Probst entered into a plea agreement regarding his three pending cases. Probst agreed to plead guilty to Level 6 felony criminal confinement under Cause F6-345, Level 6 felony possession of methamphetamine under Cause F6-440, and Class A misdemeanor battery under Cause CM-865. In exchange, the State dismissed the five remaining counts. Sentencing was left open.

[9] The trial court held a sentencing hearing on July 25, 2019 and took the matter under advisement. Thereafter, on August 12, 2019, the trial court sentenced Probst as follows: (1) 545 days under Cause F6-345, with no time suspended; (2) 365 days under Cause CM-865, with no time suspended and served

consecutive to Cause F6-345; and (3) 910 days under Cause F6-440, all time suspended and served consecutive to the two other causes. Thus, Probst essentially received an aggregate sentence of five years with two and one-half of those years suspended to probation.

## Discussion & Decision

[10] Probst challenges the sentence imposed by the trial court as inappropriate. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

For each of his Level 6 felony convictions, Probst faced a sentencing range of six months to two and one-half years, with the advisory sentence being one year. *See* Ind. Code § 35-50-2-7(b). He could be sentenced up to one year for the Class A misdemeanor. *See* I.C. § 35-50-3-2. Pursuant to I.C. § 35-50-1-2(e), the individual sentences were required to be served consecutively. Thus, the maximum aggregate sentence faced by Probst was six years and the minimum was two years. The trial court imposed five years and suspended half of that.

With regard to the nature of the confinement and battery offenses, we observe that there were two separate victims. Probst acknowledges on appeal that the details of these crimes "depict scary scenarios" where he violently attacked two different girlfriends "with his hands *and teeth*." *Appellant's Brief* at 12 (emphasis supplied). We find that the attacks, committed only months apart, were particularly disturbing. Moreover, the battery and possession of methamphetamine offenses were committed within days of each other and while Probst was out of bond following his brutal attack of Boatman. We agree with the State that Probst's offenses over a three-month period show a disregard for the law and an indifference to the potential consequences of his actions. Further, Probst admitted that even after the most recent offense he continued to use methamphetamine daily until he was arrested in early March 2019, on the warrant issued under Cause CM-865 on December 3, 2018.

Considering his character, we acknowledge that he was only eighteen at the time of each of his offenses and that he apologized to the victims and accepted responsibility. But Probst was not a typical eighteen-year old, as he had worked

for over two years as a laborer, having dropped out of high school at sixteen, and in a short time established a history of serious drug use and violent propensities. He also had a juvenile adjudication just prior to him turning seventeen which involved him unlawfully (and dangerously) operating a vehicle while his passenger shot at a deer out of the vehicle's window. Probst is indeed in need of substance abuse treatment and anger management classes, but as the trial court determined, Probst has established himself to be a "risk to community safety and is best treated in a facility" and then on probation. *Transcript* at 90.

[14] We cannot say that Probst's aggregate five-year sentence, half of which is suspended to probation, is inappropriate in light of the nature of the three entirely separate offenses he committed and his troubling character.

[15] Judgment affirmed.

Robb, J. and Bradford, C.J., concur.