## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2020, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon Lawrence Johnson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 29, 2020

Court of Appeals Case No. 20A-CR-1489

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No. 59C01-1602-F4-160

**Mathias, Judge.**

[1] Brandon Lawrence Johnson ("Johnson") pleaded guilty in Orange Circuit Court to Level 4 felony dealing in methamphetamine. The trial court sentenced

Johnson to twelve years executed in the Department of Correction. Johnson appeals and argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Johnson also claims that the trial court erred when it withheld his public defender fees from the cash bond posted by his mother.

[2] We affirm Johnson's sentence, but reverse and remand for an evidentiary hearing on the bond issue.

## Facts and Procedural History

[3] In January 2016, law enforcement officials executed a search warrant at a home Johnson shared with numerous individuals. Johnson was not present when the warrant was executed. On February 4, an informant revealed Johnson's location to Indiana State Police Detective Shane Staggs. That same day, Detective Staggs learned that Johnson was driving from Paoli, Indiana to French Lick, Indiana in a white Oldsmobile. The detective sought assistance from the French Lick Police Department, and Officer Kenneth Qualkenbush observed a white Oldsmobile traveling on the highway.

[4] The officer stopped the vehicle after witnessing a traffic violation. Johnson gave a false name to Officer Qualkenbush during the traffic stop. When Detective Staggs arrived at the scene, Johnson admitted his true identity. Because Johnson was on probation in Dubois County, the officers searched him and the vehicle. During the vehicle search, the officers found a digital scale, plastic baggies containing .001 gram of methamphetamine, and two hypodermic

needles. Johnson was arrested, and subsequent to his arrest, he gave a statement to Detective Staggs. Johnson admitted that the items found during the search belonged to him. He also confessed to dealing methamphetamine and provided details of his dealing activities to the detective.

On February 8, 2016, Johnson was charged with Level 4 felony dealing in methamphetamine, Level 5 felony possession of methamphetamine, and Class B misdemeanor false informing. The State also alleged that Johnson was a habitual offender. Johnson was also denied bond because a petition to revoke his probation was pending in Dubois County. After the probation proceedings were resolved, a bond amount was established. Johnson was released on bond in September 2016 after his mother posted a $5,000 cash bond. But his bond was revoked one month later, after Johnson was arrested for a new offense.

On April 3, 2017, Johnson agreed to plead guilty to Level 4 felony dealing in methamphetamine in exchange for dismissal of the remaining charges and dismissal of two additional pending cases involving drug-related charges committed while Johnson was on bond. The plea agreement left sentencing to the trial court's discretion.

Johnson's sentencing hearing was held on May 1, 2017. At sentencing, Johnson claimed he engaged in dealing solely to support his own drug addiction. The trial court rejected Johnson's claim after reviewing Johnson's statement to Detective Staggs concerning the extent of his dealing activities. The trial court found three mitigating circumstances: Johnson's guilty plea; his drug addiction;

and that he suffers from mental illness. The court weighed these circumstances against the following aggravating circumstances: Johnson's criminal history; that he was on probation when he committed this offense; that he committed additional offenses while he was released on bond; and the circumstances surrounding this offense. The court then ordered Johnson to serve twelve years executed in the Department of Correction.

[8] Also, at the hearing, the court asked Johnson's public defender to submit a bill for his pauper counsel fees. Johnson's counsel submitted a bill totaling $3,126, and that amount plus $383 in court fees were deducted from the $5,000 cash bond. The remaining amount was eventually released to Johnson's mother.

[9] In 2018, Johnson requested permission to file a belated appeal, which the trial court denied on January 14, 2019. Our court affirmed the trial court's denial of Johnson's request. But our supreme court granted Johnson's petition to transfer and found that Johnson did not knowingly and voluntarily waive his right to appeal his sentence. *Johnson v. State*, 145 N.E.3d 785, 787 (Ind. 2020) (per curiam). Therefore, our supreme court reversed the trial court's order denying Johnson's motion, *id*., and he filed his belated notice of appeal on August 13, 2020.

## I. Inappropriate Sentence

[10] Johnson argues that his twelve-year sentence is inappropriate under Indiana Appellate Rule 7(B), which provides the standard by which we exercise our constitutional authority to review and revise sentences. Under this rule, we

modify a sentence when we find that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B). Making this determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Yet, sentence modification under Rule 7(B) is reserved for "a rare and exceptional case." *Livingston v. State*, 113 N.E.3d 611, 612 (Ind. 2018) (per curiam).

[11] When conducting this review, we generally defer to the sentence imposed by the trial court. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Indeed, our role is to "leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Thus, deference to the sentence imposed by the trial court will prevail unless the defendant produces compelling evidence portraying in a positive light the nature of the offense—such as showing restraint or a lack of brutality—and the defendant's character—such as showing substantial virtuous traits or persistent examples of positive attributes. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018); *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[12] The range of sentence that may be imposed for a Level 4 felony is two to twelve years. Ind. Code § 35-50-2-5.5. Here, the trial court ordered Johnson to serve a maximum twelve-year executed sentence. We have often said that maximum sentences should generally be reserved for the worst offenders and offenses. *See,*

*e.g., Payton v. State*, 818 N.E.2d 493, 498 (Ind. Ct. App. 2004), *trans. denied*. But determining which cases constitute "the worst of the worst" is a task we entrust to our trial courts—they "will know them when they see them." *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011).

[13]     Concerning the nature of the offense, Johnson focuses on the small amount of methamphetamine found during the vehicle search and his self-serving claim that he was dealing to support his drug addiction. However, the record supports a reasonable inference that Johnson's dealing activities were not minimal.

[14]     Johnson admitted that he drove to both Indianapolis and Louisville to obtain methamphetamine. For an unspecified period of time, he drove to Louisville every day to purchase at least one-half ounce of methamphetamine. Ex. Vol., State's Ex. 1. Two days before he was arrested in this case, Johnson drove to Indianapolis to purchase eight grams of methamphetamine. *Id*. Johnson also sold a gram of methamphetamine approximately twenty minutes before the traffic stop that led to his arrest. *Id*. Although Johnson was only convicted of one count of dealing in methamphetamine, by his own admission, he was engaged in activities related to dealing for many days, and he sold a significant amount of methamphetamine. *Id*.

[15]     The character of the offender also supports the sentence imposed. Johnson's criminal history dates back to 2003, and most of it involves drug-related charges. In addition to felony possession charges involving illegal substances and paraphernalia, he was convicted, in 2007, of dealing in methamphetamine.

His probation was revoked in several causes while serving sentences for his various convictions. In fact, Johnson was on probation when he committed dealing in this case.

[16] Although Johnson accepted responsibility for his offenses, he also received a significant benefit for pleading guilty in this case. In exchange for his guilty plea, the State agreed to dismiss the possession and false informing charges and the habitual offender allegation in this case as well as charges in two separate cases filed while this case was pending. Those charges included possession of methamphetamine, possession of a controlled substance, possession of marijuana, unlawful possession or use of a legend drug, maintaining a common nuisance, and unlawful possession of a syringe. Johnson was out on bond in this case when he was arrested for the offenses charged in those two cases.

[17] Johnson argues that the facts that he did not commit any new criminal offenses for eight years—after he was sentenced for the 2007 dealing conviction—and was sober for many years after that conviction reflect positively on his character. And Johnson alleged that his wife tried to kill him in 2013 by burning down his house, which caused the death of his best friend and dogs. As a result, Johnson suffers from anxiety and depression. Johnson argues that he relapsed and returned to illegal substance abuse to cope with these tragedies and the deaths of other family members and friends.

[18] While Johnson was on probation for his 2015 possession of paraphernalia conviction in Dubois County, he was ordered to participate in a drug program.

Instead of taking advantage of that opportunity for rehabilitation, Johnson continued to use illegal substances and was dealing methamphetamine. Even being out on bond for the charges in this case did not deter Johnson from continuing to possess various illegal substances. Additionally, during the traffic stop that led to the charges in this case, Johnson lied about his identity. None of these facts reflect well on Johnson's character.

[19]   Johnson may have led a law-abiding life for several years, and we are sympathetic to the tragedies that he has suffered. If another judge had been tasked with sentencing Johnson, he or she may have been more lenient after considering these circumstances. However, Johnson failed to take advantage of the opportunities available to him for rehabilitation. Instead, he began using illegal substances again and committed numerous drug-related offenses until he was incarcerated for the dealing-in-methamphetamine conviction in this case. For all of these reasons, we conclude that his sentence is not inappropriate in light of the nature of the offense and the character of the offender. Quite simply, this is not "a rare and exceptional case" warranting sentence modification under Rule 7(B). *Livingston*, 113 N.E.3d at 612.

## II. Bond

[20]   Johnson's mother posted a $5,000 bond in this case. During Johnson's sentencing hearing, the trial court ordered the public defender to submit a request for pauper counsel fees to the court. The court stated that it intended to withhold the fees from Johnson's bond. Tr. pp. 57–58. The public defender submitted a bill in the amount of $3,126. These fees and other court costs were

deducted from Johnson's bond, and the remaining amount was eventually returned to his mother. Johnson argues that the trial court abused its discretion when it ordered the public defender fees to be withheld from the cash bond.

[21] Sentencing decisions include decisions to impose fines, costs, and fees. *Polk v. State*, 88 N.E.3d 226, 229 (Ind. Ct. App. 2017). We review a trial court's sentencing decisions for an abuse of discretion. *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016). An abuse of discretion occurs when a sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[22] Bail bonds are governed by statute. *See* Ind. Code ch. 35-33-8.

> When a clerk receives a criminal defendant's bond, she holds it (among other reasons) to ensure the defendant's appearance in court. . . . But a defendant may be entitled to recoup any remaining portion of the cash bond if the court alters or revokes bail, or when the criminal matter ends[].

*Garner v. Kempf*, 93 N.E.3d 1091, 1095–96 (Ind. 2018) (internal citations and quotations omitted).

[23] The bail bond statute in effect when Johnson posted his bond provided in relevant part:

> (a) A court may admit a defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings, or, upon a showing of clear and

convincing evidence that the defendant poses a risk of physical danger to another person or the community, to assure the public's physical safety:

> (1) Require the defendant to:
>
>> (A) execute a bail bond with sufficient solvent sureties;
>>
>> (B) deposit cash or securities in an amount equal to the bail;
>>
>> (C) execute a bond secured by real estate in the county, where thirty-three hundredths (0.33) of the true tax value less encumbrances is at least equal to the amount of the bail;
>>
>> (D) post a real estate bond; or
>>
>> (E) perform any combination of the requirements described in clauses (A) through (D).
>
> If the court requires the defendant to deposit cash or cash and another form of security as bail, *the court may require the defendant and each person who makes the deposit on behalf of the defendant to execute an agreement that allows the court to retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted*. The defendant must also pay the fee required by subsection (d).

I.C. § 35-33-8-3.2(a)(1) (2016) (emphasis added).[1]

---

[1] The subsection that follows, 3.2(a)(2), offers an alternative: ten percent of the bail may be posted, but that amount is subject to retention by the clerk of the court for the reimbursement of publicly paid costs of representation by operation of law. Ind. Code § 35-33-8-3.2(a)(2) (requiring the defendant to execute an agreement that allows the court to retain the cash or securities to pay costs and fees if the defendant is

[24] Subsection 3.2(a)(1) gives the trial court discretion to require the defendant or person posting the bond on his or her behalf to execute an agreement to allow the court to retain all or part of the cash bond to pay publicly paid costs of representation. Here, the record fails to indicate whether such an agreement was executed. This is problematic for two reasons.

[25] First, we cannot say whether Johnson's mother agreed to "allow[] the court to retain . . . part of the cash to pay publicly paid costs of representation." I.C. § 35-33-8-3.2(a)(1). If she did not execute an agreement, the trial court should not have retained the cash bond to pay Johnson's public defender's fees. And second, Johnson notes that an indigency hearing was not held before the court ordered the costs of representation withheld from his cash bond. But whether such a hearing was required depends on whether Johnson's mother executed a bail-bond agreement. *Wright v. State*, 949 N.E.2d 411, 416 (Ind. Ct. App. 2011) ("[W]hen a bail bond agreement is executed, [an indigency] hearing is not required.").

[26] The State suggests that we remand this case to determine whether Johnson's mother executed the agreement permitted by subsection 3.2(a)(1) when she posted the cash bond on Johnson's behalf.[2] Because the existence of the

---

convicted). Johnson's mother posted the full amount of bail in a $5,000 cash bond pursuant to subsection 3.2(a)(1).

[2] Without citation to authority, the State suggests that if Johnson's bond was revoked, his cash bond "could have been forfeited." Appellee's Br. at 17. There is no language in Indiana Code section 35-33-8-3.2 that would support his argument. Moreover, in *Garner*, our supreme court stated that a defendant may be entitled to recoup the remainder of his or her cash bond if the trial court revokes bail. 93 N.E.3d at 1095–96.

agreement determines the outcome of this issue, we agree that the best course is to remand for an evidentiary hearing to determine whether Johnson's mother executed an agreement when she posted the cash bond in this case.

## Conclusion

[27] Johnson has not persuaded us that his twelve-year sentence is inappropriate in light of the nature of the offense and the character of the offender. However, we reverse the trial court's order allowing Johnson's bond to be used to pay his public defender's fee and remand this case to the trial court for an evidentiary hearing concerning the bond issue raised in this appeal.

[28] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Altice, J., and Weissmann, J., concur.