# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 11 2020, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin Loheide
Law Office of Benjamin Loheide
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ivan Cornel Augustin Hendrickson, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | December 11, 2020 <br><br> Court of Appeals Case No. 20A-CR-569 <br><br> Appeal from the Bartholomew Circuit Court <br><br> The Honorable Kelly S. Benjamin, Judge <br><br> Trial Court Cause Nos. 03C01-1902-F5-1080 03C01-1905-F2-2924 |

**Kirsch, Judge.**

After Ivan Cornel Augustin Hendrickson, Jr. ("Hendrickson") entered an open plea agreement with the State, the trial court sentenced Hendrickson to twenty-two years for Level 2 felony dealing in methamphetamine[1] and six years, all suspended to probation, for Level 5 felony operating a motor vehicle after forfeiture of license for life,[2] which was to run consecutively to the sentence for dealing methamphetamine, yielding an aggregate sentence of twenty-eight years with twenty-two years executed. Hendrickson raises two issues on appeal, which we restate as:

> I. Whether the trial court abused its discretion by not identifying mitigating factors in its sentencing order; and

> II. Whether Hendrickson's sentence is inappropriate.

We affirm.

## Facts and Procedural History

On December 10, 2018, a confidential informant ("CI") contacted Detective Adam DeBoth ("Detective DeBoth") of the Bartholomew County Sheriff's Office and said that he or she could get methamphetamine from Hendrickson. *Appellant's App. Vol. 2* at 23. Detective DeBoth gave the CI $300 and equipped the CI with surveillance and electronic monitoring equipment. *Id*. Detective

---

[1] *See* Ind. Code § 35-48-4-1.1(a)(1), (e)(1).

[2] *See* Ind. Code § 9-30-10-17(a)(1).

DeBoth accompanied the CI to the location designated for the drug deal. *Id.* Hendrickson had already arrived. *Id.* The CI gave Hendrickson the $300, and Hendrickson gave the CI more than ten grams of methamphetamine. *Id.*; *Tr. Vol. 2* at 25.

[4] On December 19, 2018, Detective DeBoth was again contacted by a CI. *Appellant's App. Vol. 2* at 23. The CI indicated that he or she could buy half an ounce of methamphetamine from Hendrickson. *Id.* Two other detectives met the CI, and they gave the CI $350 and equipped the CI with surveillance and electronic monitoring equipment. *Id.* Detective DeBoth accompanied the CI to the designated location for the drug deal. *Id.* Hendrickson was already present. *Id.* The CI gave Hendrickson the $350, and Hendrickson gave the CI 13.40 grams of methamphetamine. *Id.*

[5] On January 31, 2019, Officer Brandon Decker ("Officer Decker") of the Columbus Police Department received information that Hendrickson entered a black sport-utility vehicle with a while female near a particular gas station. *Id.* at 19. The female was believed to be Breanna Meier ("Meier"), Hendrickson's girlfriend, who had an active warrant for her arrest. *Id.* Officer Decker knew that Hendrickson was an habitual traffic violator and had forfeited his driving privileges for life. *Id.* Officer Decker immediately proceeded to the area in a fully marked police vehicle. *Id.* He identified a black sport-utility vehicle and observed that it was traveling seventy-five miles per hour in a seventy-miles-per-hour zone and that the license plate light was not illuminated, so Officer Decker initiated a traffic stop. *Id.* Officer Decker approached the driver's side of the

vehicle and identified Hendrickson as the driver. *Id*. He ordered Hendrickson to turn off the engine and exit the vehicle. *Id*. Hendrickson turned off the engine as instructed, but he then began to reach between the driver's seat and the center console. *Id*. Officer Decker reached into the vehicle and secured Hendrickson's wrists. *Id*. Hendrickson then complied with Officer Decker's order to exit the vehicle. *Id*. Officer Decker discovered that the vehicle was uninsured. *Id*. Hendrickson later explained that Meier had asked him to drive, so she could put on her makeup while they drove. *Appellant's Conf. App. Vol. 2* at 48.

[6]     On February 26, 2019, the State charged Hendrickson with operating a motor vehicle after forfeiture of license for life, a Level 5 felony, under cause 03C01-1902-F5-1080 ("Cause 1080"). *Appellant's App. Vol. 2* at 17. On May 21, 2019, the State charged Hendrickson with two counts of dealing methamphetamine, each as a Level 2 felony, under cause 03C01-1905-F2-2924 ("Cause 2924"). *Id*. at 21-22. Hendrickson also faced charges in other cases at that time. On October 3, 2018, the State had charged Hendrickson with operating a motor vehicle after forfeiture of license for life, a Level 5 felony, under cause 03C01-1810-F5-5503 ("Cause 5503"). *Appellee's App. Vol. 2* at 11. On March 8, 2019, the State charged Hendrickson with dealing in a narcotic drug, a Level 4 felony; conspiracy to commit dealing in a narcotic drug, a Level 4 felony; conspiracy to commit trafficking with an inmate, a Level 5 felony; and possession of a narcotic drug, a Level 6 felony, all under cause 03C01-1903-F4-1331 ("Cause

1331"). *Id.* at 24-27. On April 2, 2019, the State added an habitual offender allegation under both Cause 1331 and Cause 5503. *Id.* at 12, 30.

[7] On January 16, 2020, Hendrickson pleaded guilty pursuant to a plea agreement, which addressed all four cause numbers. *Appellant's App. Vol. 2* at 28-31; *Tr. Vol. 2* at 5. Hendrickson admitted to one count of dealing in methamphetamine as a Level 2 felony under Cause 2924 and operating a motor vehicle after forfeiture of license for life as a Level 5 felony under Cause 1080. *Appellant's App. Vol. 2* at 28; *Tr. Vol. 2* at 5. In exchange, the charges under Cause 5503 and Cause 1331 were dismissed, as well as the remaining charge for dealing methamphetamine under Cause 2924. *Appellant's App. Vol. 2* at 28; *Tr. Vol. 2* at 35-36.

[8] On January 16, 2020, the trial court held a guilty-plea hearing and took the matter under advisement. *Appellant's App. Vol. 2* at 26-27. On February 20, 2020, the trial court conducted a hearing in which it accepted Hendrickson's plea and heard testimony regarding Hendrickson's sentence. *Tr. Vol. 2* at 4-31, 36. Hendrickson testified about his past, which included a troubled childhood. *Id.* at 9. Hendrickson's alcohol and drug use began when he was young. *Id.* He explained that the loss of several close family members between 2012 and 2014 increased his dependence on alcohol and drugs. *Id.* at 9-10. He eventually began selling drugs in order to support his habit. *Id.* at 10. He admitted to having an extensive criminal record. *Id.* at 9. Hendrickson expressed remorse at the hearing. *Id.* at 12. Hendrickson also testified about helpful programs he participated in while incarcerated at the Bartholomew

County Jail and expressed his desire to enter a rehabilitation program for his addictions. *Id*. at 11-12.

[9] Hendrickson admitted he had acquired fifty-six grams of methamphetamine. *Id*. at 15. Hendrickson also admitted that at least some of his past crimes were unrelated to his use of illegal substances and that he had never successfully completed probation. *Id*. at 9, 15. Lieutenant Toby Combest ("Lieutenant Combest") of the Columbus Police Department testified that Hendrickson was "a little above" a mid-level drug dealer. *Id*. at 24, 29. Lieutenant Combest also testified that Hendrickson, at one point, made $3,000 a day dealing drugs. *Id*. at 29-30.

[10] At the hearing, the trial court identified five aggravating factors: Hendrickson's criminal history; his failure to successfully complete probation; his unsuccessful rehabilitation efforts; a jail-rule violation; and a pending case in Johnson County for aiding, inducing, or causing dealing in methamphetamine. *Appellant's App. Vol. 2* at 32-33. The trial court noted that Hendrickson's criminal history included four felony convictions and eight misdemeanor convictions. *Tr. Vol. 2* at 36. The trial court also stated that Hendrickson's "plea of guilty that he entered is a mitigating factor," but recognized "the pragmatic fact of that [plea]" and stated that "the other charges that were dismissed is a great benefit." *Id*. at 39. The trial court also discussed several other circumstances, including Hendrickson's difficult childhood, his substance abuse, and his cooperation with the presentence investigation report, but it did not find that these were mitigating factors. *Id*. at 38-39.

[11] The trial court issued a written sentencing order the same day as the sentencing hearing. *Appellant's App. Vol. 2* at 32-35. The order reiterated the same five aggravating factors identified at the sentencing hearing. *Id*. The written sentencing order, however, stated that "[t]he Court finds no mitigating circumstances." *Id*. at 32. In Cause 2924, the trial court sentenced Hendrickson to a sentence of twenty-two years for Level 2 felony dealing in methamphetamine, with no time suspended. *Tr. Vol. 2* at 39; *Appellant's App. Vol. 2* at 33. In Cause 1080, the trial court sentenced Hendrickson to six years for Level 5 felony operating a motor vehicle after forfeiture of license for life, to run consecutively to the sentence for dealing methamphetamine but with all six years suspended to probation. *Tr. Vol. 2* at 39; *Appellant's App. Vol. 2* at 33. The trial court ordered Hendrickson to serve all executed time in the Indiana Department of Correction. *Appellant's App. Vol. 2* at 33; *Tr. Vol. 2* at 39. Hendrickson now appeals. We will provide additional facts as necessary.

## Discussion and Decision

## I. Abuse of Discretion

[12] Hendrickson claims the trial court abused its discretion in failing to identify mitigating factors in its written sentencing order.[3] Hendrickson correctly

---

[3] Hendrickson actually claims the trial court committed error instead of contending the trial court abused its discretion. However, because the finding of mitigating factors is a matter of trial court discretion, we will analyze Hendrick's argument under the abuse-of-discretion standard. *See Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

observes that during the sentencing hearing the trial court discussed potential mitigating factors but did not cite those factors in its written sentencing order.

[13] Sentencing is left to the discretion of the trial court, and an appellate court reviews its decisions only for an abuse of that discretion. *Singh v. State,* 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* The finding of mitigating circumstances falls within the trial court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The trial court is not obligated to find a circumstance to be mitigating merely because it is advanced by the defendant. *Id.* at 493.

[14] An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to show the mitigating factor is both significant and clearly supported by the evidence. *Id.* Further, if the trial court does not find the existence of a mitigating factor, it is not obligated to explain why it has found that the factor does not exist. *Id.* A trial court abuses its discretion only if "the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law." *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016) (quoting *Anglemyer*, 868 N.E.2d at 490), *trans. denied*.

[15]     Here, Hendrickson accurately notes that during the sentencing hearing, the trial court discussed purported mitigating factors. For instance, the trial court described Hendrickson's guilty plea as a "mitigating factor," but the trial court also stated that Hendrickson's plea was a "pragmatic" decision and that Hendrickson received a "great benefit" from the plea agreement because several other charges were dismissed. *See Tr. Vol. 2* at 39. The trial court also discussed several other potential mitigating circumstances, including Hendrickson's difficult childhood, his substance abuse, and his cooperation with the presentence investigation. *Id*. at 38-39. Hendrickson is correct that the trial court did not mention these purported mitigating factors in its written sentencing order. *Appellant's App. Vol. 2* at 32-35. Hendrickson thus contends there is an "ambiguity" between the trial court's statements at the sentencing hearing and its written sentencing order, and this ambiguity "makes it difficult, if not impossible, to know with certainty what the [trial] court's reasons for its sentence and to have any meaningful review over that decision." *Appellant's Br.* at 15-16. Hendrickson thus asks us to remand this matter to allow the trial court to clarify its sentencing order or to conduct a new sentencing hearing.

[16]     The trial court did not abuse its discretion by not reciting in its sentencing order the purported mitigating factors it discussed during the sentencing hearing. Although the trial court discussed Hendrickson's guilty plea, difficult childhood, substance abuse, and cooperation with the presentence investigation at the sentencing hearing, it did not actually find that those factors were mitigating. *Tr. Vol. 2* at 38-39. Thus, the trial court's statements at the

sentencing hearing show that it considered these factors but rejected them as mitigating factors. *See Anglemyer*, 868 N.E.2d at 493 (holding that trial court considered and rejected a potential mitigator when the factor was discussed by the trial court but omitted from the sentencing statement). A sentencing court is not obligated to find a circumstance to be mitigating merely because it is advanced as such by the defendant, nor is it required to explain why it chose not to make a finding of mitigation. *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007).

[17]     Moreover, we disagree with Hendrickson's claim that "the written sentencing order does not appear to match the stated sentencing rationale." *Appellant's Br.* at 15-16. The trial court's statements at the sentencing hearing show that it considered factors that Hendrickson contended were mitigating, but it did not actually state that those factors were mitigating factors. The trial court's statements at the sentencing hearing and its written sentencing order were not inconsistent. Thus, the trial court did not abuse its discretion by failing to recite in in its sentencing order the purported mitigating factors it discussed during the sentencing hearing, and we therefore decline Hendrickson's request to remand this matter to the trial court for clarification or a new sentencing hearing.

## II. Inappropriate Sentence

[18]     Hendrickson claims that his sentence is inappropriate considering the nature of his offenses and his character. Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence is inappropriate considering the nature of the offense and the

character of the offender. *Anglemyer*, 868 N.E.2d at 491. The nature of offense compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008), while the character of the offender permits for a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and other factors that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224.

[19] We consider not only the aggravators and mitigators found by the trial court but also any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). We defer to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). When we review a sentence, we seek to leaven the outliers, not to achieve a perceived correct result. *Cardwell*, 895 N.E.2d at 1225.

## Nature of Offense

[20] Hendrickson argues that his twenty-eight-year aggregate sentence is inappropriate because he suggests there was nothing particularly egregious about the facts and circumstances of his crimes. When considering the nature of the offense, the advisory sentence is the starting point in our analysis. *Anglemyer*, 868 N.E.2d at 494; *Holloway v. State*, 950 N.E.2d 803, 806 (Ind. Ct. App. 2011). As a Level 2 felony, Hendrickson's conviction for dealing methamphetamine carried an advisory sentence of seventeen and one-half years with a range of ten to thirty years. Ind. Code § 35-50-2-4.5. Thus, his twenty-two-year sentence was four and one-half years greater than the advisory sentence but eight years less than the maximum sentence. *See id.* As a Level 5 felony, Hendrickson's conviction for operating a motor vehicle after a lifetime forfeiture carried an advisory sentence of three years, with a range of one to six years. Ind. Code § 35-50-2-6(b). Therefore, Hendrickson received the maximum sentence for this conviction, although the trial court suspended all of that sentence to probation. *See Tr. Vol. 2* at 39.

[21] The nature of the offense is found in the details and circumstances of the commission of the offense. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). The nature of the offense refers to a defendant's actions in comparison with the elements of the offense. *Cardwell*, 895 N.E.2d at 1224. When determining whether a sentence that exceeds the advisory sentence is inappropriate, "we consider whether there is anything more or less egregious about the offense as committed by the defendant that 'makes it different from the typical offense

accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway*, 950 N.E.2d at 807), *trans. denied*.

[22] In claiming there was nothing egregious about his offenses, Hendrickson first argues that even counting the dealing methamphetamine charge that was dismissed, he sold only $650 worth of methamphetamine, and the weight of the methamphetamine in each sale only slightly exceeded the ten-gram threshold to qualify as Level 2 felony. "When analyzing Hendrickson's offense along the spectrum of the others in this category, his cannot rate as one of the more notable or severe." *Appellant's Br*. at 12. As to his conviction for operating a motor vehicle after a lifetime forfeiture, Hendrickson argues there was nothing egregious or remarkable about his offense because he was driving the vehicle at "[Meier's] request so she could put on her makeup." *Id*. at 13 (citing *Appellant's Conf. App. Vol. 2* at 48).

[23] We reject Hendrickson's arguments that the nature of his offenses makes his twenty-eight-year aggregate sentence inappropriate. As to his dealing methamphetamine conviction, Hendrickson possessed and sold large amounts of methamphetamine. He admitted to acquiring fifty-six grams of methamphetamine and sold nearly twenty-four grams of the drug in just two transactions. *Appellant's App. Vol. 2* at 23; *Tr. Vol. 2* at 15. This conduct exceeds the elements of the offense, so his twenty-two-year sentence is not inappropriate. *See Zavala v. State*, 138 N.E.3d 291, 301 (Ind. Ct. App. 2019) (citing *Cardwell*, 895 N.E.2d at 1224 ("The nature of the offense analyzes the

defendant's action in comparison with the elements of the offense.")), *trans. denied*. Neither does the nature of Hendrickson's conviction for operating a vehicle after forfeiture of his license for life make his six-year suspended sentence inappropriate. Hendrickson drove a vehicle without a driver's license, without insurance, and with a license plate light that was not illuminated. *Appellant's App. Vol. 2* at 19-20. Although Hendrickson eventually followed the officer's commands after being pulled over, he initially failed to do so and had to be restrained. *Id.* at 19. Moreover, we reject Hendrickson's effort to minimize the severity of the offense by stating that he was driving the vehicle only because Meier had asked him to drive, so she could put on her makeup. If anything, this explanation makes his offense more egregious because he drove the vehicle for Meier's convenience to perform a non-essential task, not because an emergency had arisen that made it necessary for him to drive the vehicle.

[24] Thus, considering the nature of Hendrickson's offense for dealing methamphetamine, his twenty-two-year sentence is not inappropriate. While Hendrickson's sentence exceeded the advisory sentence of Level 2 felonies by four and one-half years, his sentence was a full eight years less than the maximum sentence he could have received. *See* Ind. Code § 35-50-2-4.5. Likewise, considering the nature of Hendrickson's offense for Level 5 felony operating a motor vehicle after forfeiture of license for life, his six-year sentence was not inappropriate. While Hendrickson did receive the maximum sentence, *see* Indiana Code section 35-50-2-6(b), the trial court fully suspended that sentence. Moreover, we find Hendrickson's cavalier reason for driving – to let

Meier put on her makeup – magnifies, not minimizes, the severity of his offense. Thus, Hendrickson has failed to present compelling evidence portraying the nature of his offenses in a positive light. *See Stephenson*, 29 N.E.3d at 122. Accordingly, Hendrickson has failed to show that his twenty-eight-year aggregate sentence is inappropriate considering the nature of his offenses.

### *Character of Offender*

[25] Hendrickson makes several arguments for why his sentence is inappropriate considering his character. He says his childhood was troubled. *Tr. Vol. 2 at 9.* His father was abusive and provided alcohol and illegal drugs to Hendrickson when Hendrickson was young. *Id.* His mother was incarcerated for six years during his childhood. *Id.* Later, as an adult, Hendrickson became addicted to alcohol and drugs, and his addiction worsened as he tried to cope with the loss of several family members. *Id.* at 9-10. He eventually began selling drugs to support his drug use. *Id.* at 10. As evidence of his good character, Hendrickson points to participation in programs while incarcerated at the Bartholomew County Jail and his desire to enter a rehabilitation program for his addiction. *Id.* at 11-12. Finally, he draws our attention to his expression of remorse at the sentencing hearing. *Id.*

[26] Hendrickson has an extensive criminal history. He has twelve convictions in addition to the offenses in this case, including convictions for resisting law enforcement, public intoxication, operating a vehicle while intoxicated, battery resulting in bodily injury, and interference with reporting of a crime. *Appellant's*

*Conf. App. Vol. 2* at 41-46. Four of those convictions were felonies, and eight of those convictions were for misdemeanors. *Id*.; *Tr. Vol. 2* at 14-15. Numerous other charges were dismissed pursuant to plea agreements and, at the time of sentencing, Hendrickson had a pending charge in Johnson County for aiding, inducing, or causing dealing methamphetamine. *Id*. at 14. Though many of these crimes relate to drug activity, not all are related to Hendrickson's use of illegal substances, such as his convictions for operating a vehicle while an habitual traffic offender, battery, battery resulting in bodily injury, and interference with reporting of a crime. *Appellant's Conf. App. Vol. 2* at 45-46. Moreover, Hendrickson was not a small-time drug dealer but was instead a major player in the drug trade -- "higher than a mid-level dealer," as one witness testified -- and made a significant amount of money, $3,000 dollars a day at some point. *Tr. Vol. 2* at 29-30.

[27] Hendrickson's crimes demonstrate a pattern of committing the same or similar offenses many times. He has multiple convictions for illegal consumption, resisting law enforcement, operating a vehicle while intoxicated, and battery. *Appellant's Conf. App. Vol. 2* at 42-46. Repeatedly engaging in the same illegal behavior reflects poorly on Hendrickson's character. *See Norris v. State*, 113 N.E.3d 1245, 1256 (Ind. Ct. App. 2018) (quoting *Smith v. State*, 889 N.E.2d 261, 263 (Ind. 2008)) ("'The significance of a defendant's prior criminal history will vary 'based on the gravity, nature and number of prior offenses as they relate to the current offense.'"); *Heyen v. State*, 936 N.E.2d 294, 305 (Ind. Ct.

App. 2010) (finding the fact that the defendant "continue[d] to commit the same crimes again and again" reflected poorly on his character), *trans. denied*.

[28] Moreover, Hendrickson failed to reform his behavior despite numerous opportunities to do so. Hendrickson has been placed on probation five times, but he has never successfully completed probation. *Tr. Vol. 2* at 15. Instead, he chose to disregard the law by committing new crimes. *Appellant's Conf. App. Vol. 2* at 42-46. Hendrickson's failure to reform his behavior demonstrates that his sentence should not be revised. *See Sainvil v. State*, 51 N.E.3d 337, 344 (Ind. Ct. App. 2016) (holding that a defendant is not entitled to have his sentence revised when a trial court has "shown him leniency multiple times, with unsuccessful results"), *trans. denied*. Thus, Hendrickson has failed to present evidence portraying his character in a positive light such as evidence of substantial virtuous traits or persistent examples of good character. *See Stephenson*, 29 N.E.3d at 122. Accordingly, Hendrickson's twenty-eight-year aggregate sentence is not inappropriate considering his character.

[29] Affirmed.

Bradford, C.J., and May, J., concur.