FILED

Oct 05 2023, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Alexandria Sons
Deputy Attorney General

David P. Dekold
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harry Gillespie Nicholson, IV,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 5, 2023

Court of Appeals Case No.
23A-CR-890

Appeal from the Lake Superior
Court

The Honorable Samuel L. Cappas,
Judge

Trial Court Cause No.
45G04-2103-F3-60

**Opinion by Chief Judge Altice**
Judges May and Foley concur.

**Altice, Chief Judge.**

## Case Summary

[1] Pursuant to a negotiated plea agreement, Harry Gillespie Nicholson, IV, pleaded guilty to Level 4 felony sexual misconduct with a minor. The trial court subsequently sentenced Nicholson to the maximum term of twelve years in the Department of Correction (DOC). On appeal, Nicholson argues that his sentence is inappropriate given the nature of his offense and his character.

[2] We affirm.

## Facts & Procedural History

[3] A.H. and her mother (Mother) began living with Nicholson in Illinois in 2007, when A.H. was four years old. Nicholson eventually became A.H.'s stepfather, and the family lived in various locations in Illinois before moving to Indiana in July 2018, when A.H. was fifteen years old. On March 18, 2021, A.H. disclosed to administrators at her high school that Nicholson had been sexually abusing her for the last fourteen years. According to A.H., the abuse had occurred more times than she could count. She offered the number "1500 times" as a guess. *Appendix* at 19.

[4] A.H.'s first memory of the abuse was from shortly after she moved into Nicholson's home at the age of four. Nicholson took her into his bedroom and told her to remove her clothing and lie on the bed. After she complied, he guided her hand to his penis and told her to move her hand back and forth. He eventually placed his penis in her mouth, moving it in and out, until he ejaculated on the floor.

[5]     Similar incidents occurred over the next several years and sometimes also included him rubbing her chest area and ejaculating on her body. A.H. indicated that he continued to touch her sexually and consistently, about three to four times a week, generally when Mother was at work. At first, in response to A.H.'s protests, Nicholson would tell her that the "'boogey man' would come and get" her if she told anyone. *Id.* at 20.

[6]     When A.H. was ten years old, Nicholson began attempting to have sexual intercourse with her, which caused her pain. He was unable to fully penetrate her vagina, but he kept trying for the next two years. During this time, he also started touching her vagina with his hands.

[7]     The first time Nicholson was able to fully penetrate A.H.'s vagina with his penis happened when she was twelve years old. From that point forward, "all of the sexual activity between the two of them [involved] some form of sexual intercourse." *Id.* Nicholson would make A.H. say sexually explicit things to him, and he never wore a condom. Further, after obtaining a vasectomy in 2019, Nicolson began ejaculating inside A.H. at times.

[8]     Nicolson started using money, fifty to one hundred dollars, as an incentive for A.H. to have sex with him once she was about thirteen or fourteen years old. If she refused his demands, he would withhold money and would not allow her to see her friends. Around the age of fifteen, Nicholson began having A.H. send nude pictures of herself to him. He also made A.H. perform oral sex on him often. A.H. estimated that since moving to Indiana at the age of fifteen in 2018,

"Nicholson had sex with her approximately two times a week totaling 'hundreds of times.'" *Id.*

[9] On March 17, 2021, shortly after A.H. turned eighteen years old, Nicholson had sexual intercourse with her for the last time. He came home from work and told A.H. to come into his bedroom and take off her clothes. Nicholson "seemed annoyed" when A.H. did not follow his direction to take off her shirt. *Id.* He then spread her legs apart and put his penis in her vagina. A.H. later tearfully recounted during her sexual assault examination,

> He was holding my legs down and open. I was just laying there trying to think this wasn't happening and wanting it over. Then he was holding my legs to the side while continuing, I told him it hurt my knees[,] so he moved my legs to the other side.

*Id.* at 20-21. A.H. left the home after this sexual encounter and did not shower before her sexual assault examination the next day.

[10] Before March 18, 2021, Mother was unaware of the abuse. A.H. had confided in friends in Illinois and Indiana in the last several years about her situation, but she did not give them details. When unsuccessful in encouraging A.H. to disclose the abuse, a friend went to her own parents, who then contacted the high school. This resulted in A.H. fully disclosing the abuse at school and to Mother and law enforcement on March 18, 2021. Nicholson was not arrested for eight more days, and in the interim, Mother and A.H. were "terrified as to what he would do if he found out a case was being made against him."

*Transcript* at 17. They reported being "scared for their lives" because Nicholson was a former police officer and Marine and had "lots of guns." *Appendix* at 19.

[11]     On March 26, 2021, the State charged Nicholson with Level 3 felony rape, Level 4 felony sexual misconduct with a minor, Level 5 felony child seduction, Level 5 felony sexual misconduct with a minor, Level 6 felony child seduction, and Level 6 felony sexual battery. The parties entered into a plea agreement in February 2023, by which Nicholson pleaded guilty to Level 4 felony sexual misconduct with a minor (for having sexual intercourse with A.H. when she was at least fourteen but less than sixteen years of age) and the other counts were dismissed. The plea agreement left sentencing to the discretion of the trial court.

[12]     At the sentencing hearing on March 23, 2023, A.H. gave a victim impact statement explaining in part: "I can't offer a clear before and after, only the trauma that's been inflicted. The abuse that has occurred was almost my whole life up until the Defendant's incarceration." *Transcript* at 22. Because of the years of abuse, which she described as "violent experiences," A.H. noted that she has been diagnosed with PTSD, depression, and anxiety. *Id*. She takes antidepressants and faces "many years if not a lifetime of healing and therapy." *Id*. A.H. indicated that the abuse caused difficulty for her in "building long-term intimate relationships." *Id*. at 24. Finally, A.H. opined, "if the Defendant is ever presented with the opportunity to do something like this again, I know that he would take advantage of it." *Id*.

[13]     Mother also gave a statement at sentencing. She expressed fear that Nicholson would violate an order of protection, as he had stated to her "many times" before that "it is just a piece of paper" and that "living in rural Lowell, Indiana, it could take up to a half an hour for a police officer to respond to a call." *Id*. at 19. Mother stated that she often wakes up in the middle of the night to make sure the doors and windows are locked and that she had disassociated with many friends and family to keep them safe. Mother also remarked, "If the Defendant can do such heinous things to a child that he referred to as his own daughter, I can't imagine he wouldn't do this to somebody else." *Id*. at 20.

[14]     At the end of the sentencing hearing, the trial court rejected mitigating circumstances proffered by Nicholson, finding that the circumstances were extremely likely to reoccur given that he had repeatedly molested A.H. for fourteen years and that Nicholson's plea was a "practical solution to [his] predicament" because of DNA evidence and avoidance of a rape conviction. *Appendix* at 99. The trial court found aggravating circumstances including, among others: Nicholson was in a position of trust as A.H.'s stepfather; he had been a law enforcement officer yet violated the law many times; he molested A.H. over 1500 times, grooming her for fourteen years and breaking her spirit; the emotional and mental trauma caused by Nicholson scarred A.H. for life; and the harm suffered by A.H. was significant and greater than the elements necessary to prove the offense, as he molested her hundreds of times and had her send naked photographs of herself to him. Ultimately, the trial court found that despite Nicholson's lack of prior convictions, he was "the worst of the

worst" with a fourteen-year history of molesting A.H. *Transcript* at 48. The court observed that Nicholson was "the boogeyman" and sentenced him to twelve years in the DOC. *Id*. at 47.

[15] Nicholson now appeals, challenging the appropriateness of the trial court's imposition of the maximum sentence. Additional information will be provided below as needed.

## Discussion & Decision

[16] Pursuant to Ind. Appellate Rule 7(b), this court may revise a sentence, if, after considering the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and character of the offender. Sentencing review under App. R. 7(b) is deferential to the trial court's decision, and we avoid merely substituting our judgment. *Golden v. State*, 862 N.E. 2d 1212, 1218 (Ind. Ct. App. 2007), *trans. denied*. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] The principal role of App. R. 7(b) review is to "attempt to leaven the outliers" and to "identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve the perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The question is not whether another sentence is more appropriate; the

question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Nicholson bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[18] As the trial court imposed the maximum sentence here,[1] Nicholson directs us to the Supreme Court's observation that maximum sentences are "generally most appropriate for the worst offenders," which he claims he is not. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002). The Supreme Court explained:

> This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

*Id*. For the reasons below, we agree with the trial court that Nicholson is within the class of offenders for whom the maximum possible sentence is appropriate.

[19] The nature, extent, and depravity of Nicholson's sexual abuse of A.H. warrant imposing the maximum sentence. His conviction required only one instance of sexual intercourse with A.H. when she was at least fourteen but less than

---

[1] The sentencing range for a Level 4 felony is two to twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5.

sixteen years of age, yet the record establishes that he had sexual intercourse – always unprotected - with her hundreds of times since she was twelve years old, having tried unsuccessfully and consistently for two years before that. And he began molesting her and having her perform oral sex on him at the tender age of four. When she would protest at a young age, he threatened that the "boogeyman" would get her if she told anyone.[2] Later, he withheld money and isolated her from friends if she did not engage in sexual intercourse with him. Nicholson was in a significant position of trust over A.H., which he violated consistently for fourteen years, several times a week, for an estimated total of 1500 times. Additionally, for the last few years of the abuse, Nicholson had been requesting nude photographs from A.H.

[20] As the State argued at the sentencing hearing, the harm suffered by A.H., and later Mother, was "unbearable, crippling." *Transcript* at 30. A.H. endured a life of abuse for nearly her entire childhood at the hands of her own stepfather. As a result, she suffers from PTSD, depression, and anxiety and will likely struggle with mental and emotional issues for years to come, if not forever. Mother's life has also been altered tremendously.

---

[2] Nicholson suggests that he never used force or threat of harm when sexually abusing A.H. However, his threats about the "boogeyman" would have likely terrified a young child, and his grooming of A.H. since a young age helped ensure that he need not resort to such scare tactics for long. Indeed, according to A.H., after about the age of seven, "she did not threaten to tell anyone and these acts became something which she just got used to." *Appendix* at 20. Moreover, regarding her last sexual encounter with Nicholson, A.H. explained that he became annoyed when she would not remove her shirt and then he spread her legs, holding them "down and open," as he penetrated her vagina with his penis. *Id*. at 21. Describing the years of abuse, A.H. stated: "He would do it whenever he could. I just stopped fighting after a while.... He just held me down at my legs and hips." *Id*. at 20-21.

[21] Turning to character, Nicholson notes that he had no prior criminal convictions and that the only other charge filed against him was for violating a protective order in 2008. He also observes that at the time of his instant arrest he was employed full-time earning a six-figure income, that he successfully raised two sons (both now adults), and that he was honorably discharged by the United States Marine Corps in 1997. Despite this, we find most telling of Nicholson's character that he did not lead a law-abiding life throughout the fourteen years that he was actively and repeatedly abusing A.H., his own stepdaughter, from the tender age of four into early adulthood.

[22] Nicholson has failed to establish that the maximum sentence imposed by the trial court was inappropriate given the nature of the offense and his character. Accordingly, we affirm Nicholson's twelve-year sentence.

[23] Judgment affirmed.

May, J. and Foley, J., concur.